ALMIRA E. FACE v. THE CITY OF IONIA.

*Municipal corporations—Negligence—Public alleys.*

1. A public alley is not a public highway or street, within the meaning of Act No. 264, Laws of 1887 (3 How. Stat. § 1446c *et seq.*), giving a remedy for injuries sustained upon defective streets and highways.

2. There is no law in this State making it the duty of a city to keep its alleys in good or reasonable repair, or reasonably fit for public travel.

Error to Ionia. (Smith, J.) Argued January 7, 1892. Decided February 5, 1892.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Mitchel & Hawley,* for appellant.

*Davis & Nichols (A. A. Ellis,* of counsel), for defendant.

MORSE, C. J. An action for negligent injury resulting from a fall into an area built by a private person within the limits of Broad alley, in the city of Ionia. The court below directed a verdict for the defendant.

The area into which plaintiff fell was from 8 to 10 feet in length, and from 3 to 4 feet in width, and was left entirely unguarded, without any railing to prevent people from walking or falling into it. It had been in this condition from the time of its construction, in December, 1885, up to the time of the injury to plaintiff, November 27, 1889. The circuit judge was of the opinion that public alleys were not covered by the statute in relation to injuries received on account of the neglect of municipalities to keep streets and highways in reasonable

repair and in condition reasonably safe and fit for travel. Act No. 264, Laws of 1887.

The counsel for plaintiff contend—

1. That the evidence in the case tends to show that this alley has become a public street by dedication as well as user.

2. That a public alley is a public street in law and in the contemplation of this statute.

The place now known as the "City of Ionia" was first settled in 1833. The land was located by Samuel Dexter, and patented to him by the United States in 1833. In July, 1841, Dexter caused a survey and plat to be made of the village of "Ionia County-Seat." Minutes of the survey were indorsed on the back of the plat, and on the 28th day of August, 1841, Dexter acknowledged "the within map to be made for the use and purposes therein expressed." The map and minutes, together with the acknowledgment, were entered for record the same day in the office of the register of deeds of Ionia county. Upon this map certain streets were laid out and designated by names. Between Main and Washington streets, which are the principal streets running east and west, and between First and Second streets, which run north and south, there was left a space between lots which is now known as "Broad Alley." Between Main street and Front street, which latter street runs parallel with Main street, and south of it, a corresponding space was laid, which is also now known as "Broad Alley." The portion of the plat on the following page will explain the situation.

The space marked "X" is what is now called "Broad Alley." The injury occurred at or near the south-east corner of lot 25, the area being constructed for the purpose of a stairway down into the basement of Page's block, situated on said lot. There are also like spaces on

the remainder of the plat running from Washington to Main street, and from Main street to Front street, and opposite each other, between Second and Third streets; and also one running from Main to Washington street, between Third street and what is now known as "Dexter Street," but marked upon the plat as "Highway." These spaces or openings are all one rod wide, and have been

Figures, except numbers of lots, indicate number of links.

open and uninclosed ever since.　　It will readily be seen that these spaces were not intended for public streets or highways, as there was no necessity for them. They were undoubtedly intended as private alleys, and platted more for the benefit of the adjoining lot-owners than for any public use.　　They have been treated as alleys ever since by both the village and city authorities, and in no sense

as public streets. The travel upon them, until late years, has been such travel as is customary in the use of alleys. They have been open so that foot passengers and wagons could pass through them, and people have more or less availed themselves of such opportunity.

It was attempted to be shown, but without success, that the village and city authorities have recognized this particular alley as a public street, and done work upon it. The record shows no acceptance by the public of this alley as a street, and no work upon it by the municipal authorities. When this plat was made, and for nearly a quarter of a century thereafter, north and back of Washington street, as located on this plat, was a steep bluff, covered with bushes and small timber, and so steep and rugged in a state of nature as to be impassable for teams. There was no occasion to use this alley, as the distance between First and Second streets was but 21 rods, and there was nothing at either end of the alley calling for or inviting travel through it. In 1862 or 1863 the hill began to be settled, principally upon the top, and a short street, called "Pleasant Street," was opened north from Washington street to High street, which latter street ran on the brow of the hill parallel with Washington street. Upon reaching High street, Pleasant street ran on north for some distance, but from Washington to High street it has seldom been passable with teams. Pleasant street ended on Washington street opposite this alley in question. Since the location of the post-office where it now is, some eight or nine years ago, the foot-travelers from the places on the hill reached by Pleasant street have frequently used this alley as a short cut to the post-office; and this alley south of Main street has been used by foot-passengers oft-times in late years as a short cut to the depot of the Detroit, Lansing & Northern Railroad. The public have no doubt acquired rights

of passage in this alley by user, and it is a public alley, but it has never been known or classed by the public generally or the municipal authorities as a public street, any more than have the other alleys in the city, which have been used by the public all these years, in the same manner and to the same extent as this alley, except that for seven or eight years there has been more travel on Broad alley, for the reasons heretofore stated. No name was ever given to this alley until 1890, when all the principal alleys in the city were named by the common council for the purpose of a general postal delivery. It was named "Broad" after a meat-market proprietor whose shop was situated on the south side of Main street adjoining it, and not because of its width. For the purposes of this suit, it may be considered that this alley, although never dedicated as a public street, nor accepted as such by the public, and probably intended as a private alley, has become by user a public alley, in which the public have rights of passage which the lot-owners adjoining such alley cannot interfere with or destroy.

Conceding this to be a public alley, is a public alley in this State a public street or highway in contemplation of the statute giving a remedy for injuries received upon defective streets and highways? In solving this question, it must be remembered that, before the first act was passed giving such remedy, this Court had decided that there was no common-law liability for such injuries; and also that the statute has been held to a strict construction in its interpretation by this Court. And in 1887 the Legislature expressly enacted that municipalities should not be liable for damages, except under and according to the provisions of the statute, and abolished all common-law liability. Section 5, Act No. 264, Laws of 1887. The first effective statute was passed in 1879, and included highways, streets, bridges, cross-walks, and

culverts, and it was made the duty of municipalities to keep these "in good repair, so that they shall be safe and convenient for public travel at all times." Act No. 244, Laws of 1879; How. Stat. § 1442 *et seq.* This act was amended in 1885, so as to include sidewalks. Act No. 214, Laws of 1885. This statute as amended was declared unconstitutional, which left the law of 1879 in force.[1] In 1887 the present statute was enacted, and includes sidewalks.

In *Detroit v. Putnam*, 45 Mich. 264, it was contended by counsel that a sidewalk was a part of a public street, and, although the act of 1879 did not mention sidewalks in express terms, it was argued that the words "highways" and "streets" included them. This Court, in answer to such contention and argument, said:

"We have but little doubt that, if the liability had been created for injuries sustained in consequence of a failure to keep in repair the highways and streets, these terms would have included all within the limits of the line thereof, and thus the sidewalks, as well as the bridges, cross-walks, and culverts. The special terms used do not enlarge, but limit, the force of the general words used. In village and city charters express provisions relating to sidewalks will always be found, and the omission of such in this act is very significant. As already said, the city would not be liable in the absence of this statute which creates the liability, and we cannot by construction enlarge the liability. Where a statute attempts, in derogation of the common law, to create a liability, we cannot go beyond the clearly-expressed provisions of the act. Such statutes are not to be extended or enlarged in their scope by construction."

In 1861 the Legislature undertook to enact a law creating a liability for injuries on the public highways "by reason of neglect to keep in repair any bridge or culvert by any township or corporation *whose duty it is to keep* such bridge or culvert in repair," etc. Act No. 197,

---

[1] See *Church v. Detroit*, 64 Mich. 571.

Laws of 1861, p. 407; Comp. Laws 1871, §§ 1323, 1324. This statute was held not to create any liability against townships, because it was at that time not the duty of townships to keep bridges and culverts in repair. It was said that—

"Courts are not at liberty, in order to effectuate what they may suppose to have been the intention of the Legislature, to put a construction upon the enactment not supported by the words, though the consequences should be to defeat the object of the act. When the meaning of the words is plain and obvious, the only safe course is to suppose the Legislature to have intended those things which the words denote, and to abstain from all attempts to discover a different meaning by suppositions and conjectures." *Township of Leoni v. Taylor,* 20 Mich. 148, 155.

We find in the statute as it now stands no duty imposed upon cities to keep alleys in good repair, or in a safe and reasonable condition for public travel. There exists no such duty under the common law in this State. There is no liability created by statute for injuries received by reason of alleys being out of reasonable repair and unsafe for travel, and the common law imposes none.

In this State an alley has not generally been treated as a street or highway, nor included in either of those terms. The charter of the city of Ionia, as do all our city charters, treats an alley as different from a street. A public alley may be in a certain sense a public highway, but not in the sense of the statute under which this action is brought. The special terms used in the statute do not enlarge, but limit, the force of the general words used. As said in *Detroit v. Putnam,* 45 Mich. 264, a street would generally include all within its line; but when the statute went further, and used the words "bridges, culverts, and cross-walks," it excluded sidewalks, because of the special limitation.

It would be enlarging the scope of the statute, and

legislation by this Court, to hold that the Legislature intended to include alleys in the terms "highway" or "street."

"An 'alley' is not a highway, in the proper sense of the term, but is no more than a way subject to a modified supervision, and liable to be used for drainage and other urban services, under municipal regulations, but intended for the convenience of adjacent property, and not for general travel or passage, like streets" *Paul v. Detroit,* 32 Mich. 111.

It is also said in the same case that the proper uses of alleys are quite as familiar as those of streets, so that the word "alley" may be said to have acquired a definite meaning. And in *Beecher v. People,* 38 Mich. 291, Chief Justice CAMPBELL says:

"Assuming that alleys may, under some circumstances, involve public easements in the nature of ways, yet their primary purpose, even then, is not to be substitutes for streets, but to serve as means of accommodation to a limited neighborhood for chiefly local convenience."

Again Chief Justice MARSTON says:

"An alley can, in no proper or legal sense, be considered as a public highway, or be governed by rules relating thereto." See *Bagley v. People,* 43 Mich. 355.

In *Campau v. Board of Public Works,* 86 Mich. 372, it was held that the city of Detroit was under no legal obligations to clean and care for a public alley at the public expense.

It follows from our own rulings that even a public alley in this State is not a public highway, in the sense of the statute under which plaintiff seeks to recover, and that there is now no law in this State making it the duty of a city to keep its alleys in good or reasonable repair, or reasonably fit for public travel.

It is not necessary to discuss the cases cited from other states by counsel as bearing on this question. They

can have no controlling force or effect, as the case is clearly settled by the laws of our own State and the previous holdings of this Court.

The judgment is affirmed, with costs.

The other Justices concurred.