*In re* KLEIN'S ESTATE.

1. DESCENT AND DISTRIBUTION — PERSONS ENTITLED — GRAND-NEPHEWS.

Under 3 Comp. Laws, § 9064, subd. 2, and Act No. 331, Pub. Acts 1905, § 1, subd. 7, grandnephews and grandnieces of a woman dying intestate and leaving no husband, father, mother, children, or issue of deceased children, are not entitled to share by right of representation with sisters and the children of deceased brothers and sisters in the distribution of intestate's personal estate.

2. STATUTES—CONSTRUCTION—AMBIGUOUS PROVISIONS.

Where a statute is plain and unambiguous in its terms, the courts have nothing to do but to obey it. They may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have no right to distort those which are clear and intelligible. The fair and natural import of the terms employed, in view of the subject-matter of the law, is what should govern.

Error to Wayne; Hosmer, J. Submitted February 18, 1908. (Docket No. 30.) Decided May 1, 1908.

The probate court ordered the distribution of the estate of Sevilla Klein, deceased, among the sisters and children of deceased brothers and sisters. Julius J. Christensen, a grandnephew, appealed to the circuit court. There was a judgment sustaining the appeal, and Marie Cecilie Nielsen and others bring error. Reversed.

*Russel, Campbell, Bulkley & Ledyard,* for appellants.

*Miller, Smith, Alexander & Paddock,* for appellee.

MOORE, J. Sevilla Klein died intestate, leaving no husband, father, mother, brothers, children, or issue of deceased children, her surviving. Her estate consists partly of personal property.; and this appeal involves its distribution. The probate court ordered distribution among the sisters and children of deceased brothers and sisters. An appeal from this order was taken to the circuit court by a grandnephew of said intestate, claiming that grandnephews and grandnieces were entitled to participate in the distribution by right of representation. The circuit court sustained the appeal. The case is brought here by writ of error.

The only point in controversy is whether grandnephews and grandnieces are entitled to share in the distribution of the personal property belonging to the estate of Sevilla Klein. This involves the construction of certain portions of the statute relating to the distribution of personal property, and of the statute of descent. Subdivision 2 of section 9064, 3 Comp. Laws, reads as follows:

"If the intestate shall leave a husband or widow and no issue, one-half of the estate of such intestate shall descend to such husband or widow and the remainder to the father and mother of the intestate in equal shares; and if there be but one of the parents living, then to the survivor alone; and if the intestate shall leave no issue, husband or widow, his or her estate shall descend to the father and mother in equal shares, and if there be but one of the parents living, then to the survivor alone; and if the intestate shall leave no issue, father or mother, his or her estate

shall descend subject to the provision herein made for the widow or husband, if a widow or husband survive the deceased, in equal shares to his or her brothers and sisters and the children of deceased brothers and sisters by right of representation. The provision herein made for the widow shall be in lieu of dower, unless she shall within one year after the appointment of an administrator of the estate of the intestate begin proceedings for the assignment to her of dower in the intestate's estate, in which case her interest in such real estate shall be limited to her dower therein, and the residue of such estate shall then descend as herein provided for the portion thereof not taken by such widow."

This statute was construed in *Re Chapoton's Estate*, 104 Mich. 11, where it was held that, under the wording of the statute we have quoted, grandnephews and grandnieces could not share in the estate.

The other provisions of the statute requiring construction, read as follows:

"In case any femme covert shall die possessed of any personal estate, her sole property, or any right or interest therein not lawfully disposed of by her last will and testament, the same shall, after the debts of the deceased, funeral charges and expenses of administration are paid, be distributed as follows: One-third to the husband, and the remaining two-thirds to her children, or the issue of any deceased child or children, if any there be, by right of representation, except that if there be but one child, or the issue of a deceased child her surviving, then such residue shall be divided between such husband and such child, or the issue of such deceased child, as aforesaid, in equal proportions, and if there be no husband nor child of the intestate living at her death, her estate shall be distributed to all her lineal descendants, and if all said descendants are in the same degree of kindred to the intestate, they shall share the estate equally, otherwise they shall take by right of representation. If there shall be no child or issue of any deceased child her surviving, one-half of said residue shall go to the husband of the deceased and the other half to her father and mother, if living, in equal shares. If either parent be deceased, such share shall go to the survivor, and if both parents be deceased, such share shall be distributed equally to the brothers and

sisters and the lineal descendants of any deceased brother or sister, by right of representation; and if there shall be neither father nor mother, nor brother nor sister, nor children of such brother or sister surviving, then such residue shall go to the surviving husband; and in any other case, the residue, if any, of the personal estate shall be distributed in the same proportion and to the same persons, and for the same purposes as prescribed for the descent and disposition of the real estate." Act No. 331, Public Acts 1905, § 1, subd. 7.

It is insisted by counsel for appellee:

" That when the legislature in 1905 amended the statute of distribution, by striking out the word ' children ' and replacing it with the words ' lineal descendants,' they intended to broaden the statute so as to give it the force and effect it formerly had, when issue of deceased collaterals of intestate were allowed to take. If read literally, the 1905 amendment is inharmonious, inconsistent and ambiguous, and under such circumstances it becomes the duty of the court to so interpret the statute as to carry out the evident intent of the lawmaker, if such intent can be ascertained from the whole act. If construed as we contend it should be, the amendment at once becomes harmonious and intelligible. Moreover, no possible, valid, or conceivable reason can be or is assigned by the appellants why the legislature should have intended to dispose of the property of intestates, as they contend it should be distributed, under their construction of the statute."

If the legislature intended to effect the result for which counsel contend, it was easy for it to indicate its intent by appropriate language. This it did not do. The language employed by it is not equivocal or ambiguous; it states clearly:

" In any other case, the residue, if any, of the personal estate shall be distributed in the same proportion and to the same persons, and for the same purposes as prescribed for the descent and disposition of the real estate."

We cannot give these words the construction they were given in the court below, without reading into the statute words which the legislature did not put there. In *Peo-*

*ple, ex rel. Twitchell,* v. *Blodgett,* 13 Mich. 127, it was said:

"There are certain well-settled rules for the construction of statutes which no court can safely disregard. Where the statute is plain and unambiguous in its terms, the courts have nothing to do but to obey it. They may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have no right to distort those which are clear and intelligible. The fair and natural import of the terms employed, in view of the subject-matter of the law, is what should govern."

*Township of Leoni* v. *Taylor,* 20 Mich. 148, at page 154:

"The consequence of adopting the proposed interpretation would be the rejection, in substance, of those qualifications of the act which seems to us to be plainly a part of it, and this we apprehend would be tantamount to a judicial amendment of the law. In every exposition of a statute, the intention of the legislature is undoubtedly the end to be sought; but the construction to be given should not be repugnant to the clear meaning of the words. The courts are not at liberty, in order to effectuate what they may suppose to have been the intention of the legislature, to put a construction upon the enactment not supported by the words, though the consequences should be to defeat the object of the act. When the meaning of the words is plain and obvious, the only safe course is to suppose the legislature to have intended those things which the words denote, and to abstain from all attempts to discover a different meaning by suppositions and conjectures."

See, also, *Wilt* v. *Cutler,* 38 Mich. 189; *Reithmiller* v. *People,* 44 Mich. 280; *Face* v. *City of Ionia,* 90 Mich. 104; *People* v. *Crucible Steel Co.,* 150 Mich. 563, and the cases there cited.

The judgment is reversed, and new trial ordered.

GRANT, C. J., and BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.