EDISON ILLUMINATING CO. *v.* MISCH.

1. HIGHWAYS' AND STREETS—ALLEYS—USE BY PUBLIC SERVICE CORPORATION—MUNICIPAL CORPORATIONS.

> Under section 28, art. 8, Const. 1909, the right is reserved to all cities, villages and townships to the reasonable control of their streets, alleys, and public places.

2. SAME—MUNICIPAL CORPORATIONS—TITLE TO STREET—PUBLIC PURPOSES.

> The title of a municipality in streets and alleys is such as to enable the public authorities to devote them to public purposes.

3. SAME—RIGHTS OF ABUTTING OWNER—REVERTER—FEE.

> While the abutting owner of a public alley has the right of ingress and egress to and from his lot, and a possibility of reverter, the fee is in the municipality in trust for the public. Section 3351, 1 Comp. Laws 1915.

4. SAME—USE OF STREET—PUBLIC PURPOSES.

> A street or alley is not for the purposes of passage and travel merely, but for all the uses to which they are usually devoted, as the wants or conveniences of the public may render necessary or important.

5. SAME—PUBLIC SERVICE CORPORATIONS—RIGHTS IN ALLEY.

> A contractor who, in excavating for the erection of a building on a lot abutting on a public alley, excavates into the alley and damages the mains and conduits of a public service corporation, placed therein under its franchise granted by a city ordinance, does so at his peril; its rights in said occupancy being entitled to protection by him.

6. SAME—NOTICE—EVIDENCE—QUESTION FOR JURY.

> Evidence of the existence of manholes in the alley in the vicinity of the excavation belonging to plaintiff and other corporations, indicating the existence of the underground structures, *held*, sufficient at least to warrant the submission to the jury of the question of sufficiency to put defendant upon notice of their presence.

7. SAME—MUNICIPAL CORPORATIONS—WAIVER—DEFENSES.

> While a city might waive a provision in the franchise of a public service corporation, placed therein for the protection of the city, requiring it to obtain a permit from

the proper city authorities before placing its mains or conduits in a public street or alley, the failure of the corporation to obtain such permit is no defense to an action by it for damages to them by a private contractor while excavating in an alley preparatory to erecting a building.

8. SAME—EASEMENTS—PUBLIC SERVICE CORPORATIONS—FRANCHISE.
   The right of a public service corporation, under its franchise, to lay mains and conduits in a public alley, constituted a continuing easement with which defendant had no right to interfere.

9. APPEAL AND ERROR—HARMLESS ERROR—REVIEW.
   Assignments of error relating to the introduction of evidence, which, even if inadmissible, was harmless, will not be reviewed by the Supreme Court.

Case-made from Wayne; Van Zile, J. Submitted October 8, 1917. (Docket No. 55.) Decided March 27, 1918.

Case by the Edison Illuminating Company against Otto Misch for damages to its mains and conduits. Judgment for plaintiff. Defendant appeals. Affirmed.

*Charles R. Robertson,* for appellant.

*Oxtoby & Wilkinson,* for appellee.

STONE, J. This case was brought here by the defendant upon a case-made after judgment. It is an action on the case by the plaintiff, in its own right, and as assignee of the Central Heating Company, public service corporations, operating in the city of Detroit, against the defendant to recover damages for injuries to the underground conduits and cables of the plaintiff, and a steam heating main of the Central Heating Company, caused by a cave-in on the night of June 11, 1913, of an excavation made by defendant, extending out into an alley in the rear of premises known as No. 5 Center street. Said premises belonged to C. H. Werner & Sons, and extended from

said street to the alley in the rear. Desiring to erect a building thereon, said owners, in March, 1913, made a contract with M. E. Ryan & Son for excavating the basement; and said contract had been completed and was of a depth of about 9 feet and extended to the alley in the rear. On May 16, 1913, the owners made a contract with the defendant for the mason work. The main excavation by Ryan & Son had been completed about 30 days before defendant entered upon the premises to perform his contract. In order to put the footings under the rear wall, defendant, some days prior to June 11, 1913, extended the excavation out into the alley and beyond the lot line for a distance of about 18 inches covering the entire width of the proposed structure, and carried the excavation down an additional 5 feet, making the rear wall of the excavation, a wall of earth about 14 feet in height and extending the entire width of the proposed building. On or about June 11, 1913, the alley wall of clay caved in, carrying with it the mains of the Central Heating Company and the conduits of the Edison Illuminating Company.

Plaintiff had, for a period of about six years prior to June 11, 1913, maintained conduits in this alley, for the purpose of carrying electric wires used in its business of generating and distributing electric current within the city, under a franchise granted to it by a city ordinance approved July 13, 1886, being chapter 258, Compiled Ordinances 1912, and ordinances amendatory thereof. Before excavating in the alley for the purpose of installing its conduits, plaintiff had obtained a permit from the department of public works.

Plaintiff's assignor, the Central Heating Company, had for a considerable time prior to June 11, 1913, constructed and maintained beneath the surface of this alley, a heating main for use in its business of gen-

erating and distributing steam for heating purposes, under a franchise granted to it by an ordinance of the city, approved August 5, 1903, being chapter 265 of the Compiled Ordinances of 1912. Section 4 of the said ordinance contained the following provision:

"The said company shall, in laying its mains, occupy such parts of the streets, alleys, avenues or public places as the commissioner of public works of the city shall designate in writing, which designation shall be made without unnecessary delay, and within ten days after request in writing so to do."

Preliminary to making the necessary excavation in the alley to lay the steam main in question, the Central Heating Company had not obtained from the department of public works, any permit, running to itself by name. There was, however, produced from its files, and introduced in evidence, upon the trial, over the objection of the defendant, a permit issued by the department of public works to the Murphy Heating Company, authorizing the making of an excavation in this alley for the laying of the steam main in question. There were also introduced in evidence bills rendered by the city of Detroit to, and paid by, the Central Heating Company, for the fees of the city for inspecting the pavement of the alley, and the work of relaying it, after its steam main had been laid, and the excavation filled up. For the purpose of showing that the permit produced from the files of the Central Heating Company was made out in the name of the Murphy Heating Company by a clerical error on the part of the clerk in the department of public works who issued the permit, the franchise of the Murphy Heating Company was received in evidence, over the objection of defendant; which franchise showed that the Murphy Heating Company had no franchise to lay any steam pipes in that part of the city in which the alley in question is located.

While there were no writings, memoranda or draw-

ings on file in the office of the board of public works which showed the exact location of plaintiff's conduits, or of the steam main of plaintiff's assignor, the record shows that about 60 feet from the excavation there was a manhole of the Edison Illuminating Company, upon the iron cover of which, the date "1906," was cast, showing the time that the manhole had been constructed; that at either end of the alley were manholes of the Central Heating Company, and at the north end of the alley, beyond the property line, and within the sidewalk line, was a manhole of the Detroit Telephone Company; that 29 and 36 feet, respectively, north of the excavation was a Home Telephone manhole, and a public lighting commission manhole, and south of the excavation, and in the center of the alley, was a manhole of the public sewer. On cross-examination it was shown that the said covering to the manhole was laid in the alley pavement, and subject to being covered up by any dirt or litter that might be in said alley. Plaintiff claimed that all of these objects amounted to physical evidence of the existence of underground structures beneath the pavement of the alley, of which defendant was bound to take notice. On the other hand, defendant claimed that it was the duty of plaintiff and its assignor to comply with all the requirements of the charter, and to see that permits were properly granted; and that it was their duty to see that proper records were made, if they desired the advantage of any notice to the public.

It appeared that in laying the mains and conduits a trench was dug about five feet deep and two feet wide, which was partially filled with crushed stone, so as to allow the water to seep away; the steam mains were laid on the crushed stone, also crushed stone put about them, and the whole covered with earth; the tile conduits were placed above the steam mains and below the iron tube.

Defendant, before carrying his excavation out into the alley, did not make any inquiry of plaintiff, or its assignor, as to whether they owned and maintained any structures beneath the surface of the alley. Defendant offered to show that no notice was served, either by plaintiff, or its assignor, upon the defendant advising him of the existence, beneath the surface of the alley, of the mains and conduits in question, of the existence of which he was ignorant; which offer was overruled by the court, and defendant excepted to such ruling.

Plaintiff and its assignor expended the sum of $395.69 to repair the damages to their conduits and mains caused by the alley caving in on June 11th.

Practically the only disputed question of fact presented by the testimony, was whether or not defendant had used reasonable care in shoring or bracing up the alley wall, to prevent the caving in of the soil of the alley. The testimony of an inspector in the employ of the police department of the city was to the effect that several previous warnings had been given defendant's employees, that the alley wall of earth was in a dangerous condition, and that it had not been shored or braced up, as late as 4 o'clock in the afternoon of June 11th.

The defendant offered testimony of a number of men who were engaged in the work of making the excavation, tending to show that in compliance with instructions and suggestions given by the inspectors from the police department, the rear wall of this excavation had been shored up with planks and timbers. This question was submitted to the jury by the trial court. The trial resulted in a verdict and judgment for the plaintiff in the sum of $444.05 damages, and costs of suit.

By his assignments of error, and in his brief, counsel for defendant claims:

1. That as a contractor with the owners in fee of the lot where the excavation was made, defendant was a licensee, and entitled to all the rights of the owners of the fee in the premises, and that the fee extended to the center of the alley.

2. That it was the duty of the Central Heating Company and the Edison Illuminating Company, to fully comply with all the terms and conditions of the franchises under which they operated, that is, to obtain proper permits, and file the necessary memoranda of drawings with the department of public works. That the purpose of the conditions of the franchises was, that the public and the property owners might have notice of where steam mains and electrical conduits were laid.

3. That by reason of having dug a trench and filled it with crushed stone to permit the water to seep through, the nature of the soil was changed, and plaintiff and its assignor were not entitled to lateral support from the defendant, or his licensor.

4. That the court erred in permitting plaintiff to introduce in evidence the franchise of the Murphy Heating Company.

5. That the court erred in permitting plaintiff to show that defendant had not notified it of his intention to excavate into the alley.

6. That the court erred in refusing to permit defendant to show that he had received no notice from plaintiff or its assignor, of the existence of their steam mains and conduits in the alley.

1. It is urged by appellant that the alley is a part of the adjacent lot which belonged to Werner & Sons, whose title extended to the center of the alley; that the alley was set aside for the use, accommodation and benefit of the owners of the property abutting thereon, subject to certain limited rights therein for municipal purposes, and the grievance, if any, arising from the wrongful use of the alley is one accruing to the other abutting property owners; that it was not a wrongful use of the alley to shear off eighteen inches; that it was a matter of convenience to the defendant who was a licensee of the title holder; that the act

was no injury to abutting property owners, and that the plaintiff and its assignor were not such owners, and had merely a naked right to place and keep their pipes and conduits somewhere in the alley. On the other hand, the plaintiff claims that it is immaterial who defendant was, whether contractor, abutting property owner, or a third party; that even an abutting property owner has no right to excavate into an alley and damage property rightfully therein, whether public utility conduits, mains, city pavements, sewers or other structures; and that the damage here complained of did not arise from a wrongful use of the alley, but rather from its partial destruction by the defendant.

In *Paul* v. *City of Detroit*, 32 Mich. 108, Justice CAMPBELL said:

"An alley is no more than a way subject to a modified supervision, and liable to be used for drainage and other urban services, under municipal regulation."

See 2 C. J. p. 1151, title "Alley."

While alleys are not referred to in either the Constitution of 1835 or 1850, they are specifically referred to in our present Constitution and the right of public utilities to use alleys as well as streets, with proper municipal consent, is expressly recognized. The last clause of section 28 of article 8 reads as follows:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

The present statute relating to town plats (chapter 74, 1 Comp. Laws 1915, § 3351) vests the fee of streets and alleys in the city or village within the corporate limits of which the land platted is included, or, if not included within the limits of any incorporated village or city, then in the township within the limits of which it is included, in *trust* to and for the uses

and purposes therein designated. The former statute vested the fee of streets and alleys in the county.

It has been held by this court that whatever the nature of the title of the municipality in streets and alleys (whether a fee simple or only a conditional fee, or a perpetual easement), it is such as to enable the public authorities to devote them to public purposes. *County of Wayne* v. *Miller*, 31 Mich. 447.

Upon the vacation of a street or alley the title reverts to the abutting owners (section 3355, 1 Comp. Laws 1915); *Scudder* v. *City of Detroit*, 117 Mich. 77; *Michigan Cent. R. Co.* v. *Miller*, 172 Mich. 201

We are dealing here with an existing public alley. Before the vacating of an alley, what the interest of the abutting owner may be, whether more than that of a possibility of reverter, we need not decide. He has the right of ingress and egress to and from his lot. Manifestly, the fee is in the municipality in trust for the public. *Bay County* v. *Bradley*, 39 Mich. 166.

The dedication must be understood as made and accepted with the expectation that the street or alley may be required for other purposes than those of passage and travel merely, and that under the direction and control of the public authorities it is subject to be appropriated to all the uses to which city streets or alleys are usually devoted, as the wants or conveniences of the public may render necessary or important. *Warren* v. *City of Grand Haven*, 30 Mich. 24, 28; *Griswold* v. *Bay City*, 35 Mich. 455; *Face* v. *City of Ionia*, 90 Mich. 104.

In *Village of Manchester* v. *Clarkson*, 195 Mich. 354, Justice STEERE said:

"That public alleys involve easements in the nature of ways for the installation of water pipes, sewers and other urban services for the general welfare, under municipal regulation, is well settled."

We are clearly of the opinion that the defendant

had no right to interfere with any structures rightfully in the alley. That the mains and conduits in question had been lawfully and properly placed in the alley by authority of the city is, we think, too clear for controversy. The defendant made excavation into the alley at his peril. If he did not have from the surrounding objects and monuments sufficient to put him upon notice of the presence of the mains and conduits in the alley, there was at least sufficient evidence to warrant the submission of that question to the jury, which was done by the trial court. The plaintiff and its assignor were, by their mains and conduits, rightfully first in the alley, and their rights were entitled to protection by defendant in such occupancy. *New York Steam Co.* v. *Foundation Co.,* 195 N. Y. 43 (21 L. R. A. [N. S.] 470).

We think that the evidence is uncontradicted that the excavation into the alley by the defendant was the proximate cause of the injury. The original excavation by Ryan & Son had existed for more than 30 days, and it was not until the invasion by the defendant, that the cave-in occurred. We think that the defendant cannot justly complain of the manner in which the question was submitted to the jury by the trial court.

2. Referring to the claim of the defendant relating to the failure of the Central Heating Company to obtain the express permit mentioned in section 4 of its franchise, we are of the opinion that this provision was one for the protection of the city, and was for the purpose of advising the city to whom it should look for the restoration of the street or alley to a condition as good as before it was disturbed, in placing mains, etc. The granting of the permit seems to be mandatory upon the city. The right of the company to lay and maintain its steam pipes in streets and alleys is granted by section 1 of the franchise,

and its right extends to all of the streets and alleys in the city. There was evidence that the city rendered its bills to the Central Heating Company for inspecting the pavement of the alley, after the heating mains had been installed. We think that the city might waive the requirement, and that it was a matter that did not concern the defendant, and he cannot raise the objection. *International Harvester Co.* v. *Eaton Circuit Judge*, 163 Mich. 55; *Union Telephone Co.* v. *Ingersoll*, 178 Mich. 187.

3. Upon this point it is sufficient to say that there was no evidence that the method or manner of laying the mains and conduits by the plaintiff and its assignor, had been improper, or other than the usual and customary method. Both companies were engaged in furnishing a public service. Their rights under their respective franchises were in the nature of continuing easements, prior to the rights of the defendant in the alley. He had no right to make any use of the alley which would interfere with existing proper public uses thereof. We are not concerned here with the doctrine of lateral support, and shall not discuss that question.

We shall not discuss at length the other points urged by appellant. If there was any error in the rulings relating to the introduction of evidence, we are satisfied that it was harmless error. For instance, we are unable to see, in view of what we have already said, that the putting in evidence of the franchise of the Murphy Heating Company in any way injured the defendant or affected the result. We find no reversible error in the record, and the judgment of the circuit court is affirmed.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred with STONE, J. MOORE and KUHN, JJ., concurred in the result.