QUICK *v.* WESTERN MICHIGAN TRANSPORTATION CO.

1. AUTOMOBILES—TRUCKS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE
   —CONFLICTING TESTIMONY—QUESTIONS FOR JURY.
   In action by administratrix to recover for death of her deceased
   who had been killed in a collision between truck he was driving
   and one of defendant's trucks, questions of defendant's
   negligence and contributory negligence of deceased were
   properly submitted to and determined by jury where testimony
   was in dispute as to just where the trucks were when collision
   occurred, where the debris was following the accident, and the
   manner in which the trucks were damaged.

2. EVIDENCE—AUTOMOBILE ACCIDENT—PHOTOGRAPHS.
   Photographs showing damage to trucks involved in a collision
   are not conclusive evidence as to how an accident took place.

3. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DE-
   CEASED—TRUCK COLLISION.
   In action arising out of collision in the nighttime between two
   trucks which had been travelling in opposite directions in
   which the driver of one was killed, refusal of court to permit
   examination of surviving driver as to what occurred from time
   he had seen decedent straighten up and stare at witness until
   the first impact of the collision was not error since the sur-
   vivor could not testify as to any matter equally within the
   knowledge of the deceased, it affirmatively appears deceased
   was looking directly at witness from time he was approximately
   60 feet away, and it is presumed that deceased had knowledge
   of what was happening so far as his sense of sight could make
   him aware of it (3 Comp. Laws 1929, § 14219).

4. WORKMEN'S COMPENSATION—AGREEMENTS MUST BE APPROVED TO
   BE VALID.
   Any agreement by a widow of a deceased employee for compen-
   sation, or compensation payments, must be approved by the
   department of labor and industry in order to be valid.

5. SAME—PRIVATE GRANT.
   Payments received by private grant would not estop plaintiff
   from securing compensation according to the provisions of the
   statute; and an agreement not to take compensation would be
   invalid without the approval of the department.

6. Same—Qualified Election Not to Proceed Under Act—Prejudice to Tortfeasor.

Refusal of trial court to permit cross-examination of plaintiff,
widow of deceased truck driver whose employer was insured
by employers of plaintiff's attorneys, relative to agreement
to pay her a given sum in lieu of qualified election not to proceed under the workmen's compensation act *held*, not to have
resulted in prejudice to defendant tortfeasor who was liable
for death of the employee.

Chandler, Wiest, and Butzel, JJ., dissenting.

Appeal from Wayne; Brennan (Vincent M.), J.
Submitted April 10, 1940. (Docket No. 87, Calendar
No. 40,877.) Decided September 6, 1940. Rehearing denied November 13, 1940.

Case by Viola Quick, special administratrix of the
estate of Fred Quick, against Western Michigan
Transportation Company, a Michigan corporation,
for damages for personal injuries causing death of
plaintiff's decedent sustained in a motor vehicle
collision. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Alexander, McCaslin & Cholette (E. Dean Alexander,* of counsel), for plaintiff.

*Harold S. Knight* and *Kerr, Lacey & Scroggie,*
for defendant.

McAllister, J. Plaintiff's decedent was killed as
the result of a collision between a truck which he
was driving and a truck driven by defendant's employee. On trial before a jury, plaintiff received a
verdict of $5,500. Motion by defendant for judgment notwithstanding verdict was refused by the
trial court, and defendant appeals.

Defendant assigns error on the refusal of the
court to grant a motion for a judgment notwithstanding verdict. Complaint is also made that the

court erred in excluding testimony by defendant's driver as to the facts surrounding the accident on the ground that it was equally within the knowledge of the deceased and prohibited by statute. There is the further contention made that defendant was erroneously refused cross-examination of plaintiff with regard to a certain agreement in reference to compensation entered into between plaintiff and an insurance company. Defendant's claim with reference to the motions for directed verdict depends upon whether there was evidence to be submitted to the jury on the question of negligence of defendant's driver, and whether plaintiff had proved that decedent was free from contributory negligence.

The accident occurred March 2, 1936, about 10:30 p. m., on Michigan avenue, a six-lane traffic highway in the business district of the city of Ypsilanti. Plaintiff's decedent was proceeding in a westerly direction, and Leonard Vandenberg, defendant's driver, in an easterly direction. Vandenberg testified that, while driving on the right side of the highway, he saw the oncoming truck, driven by plaintiff's decedent, crossing the middle or dividing line of the highway to the south, which was the side of the highway occupied by defendant's truck. Vandenberg testified that, to avoid a collision, he swung to the right, and seeing that he was unable to pass, swung sharply to the left. A collision occurred, and, according to Vandenberg's claim, after such collision, his truck was carried over to the north curb to his left. Dolph Thorne, a witness sworn on the part of plaintiff, testified that he was driving an automobile and proceeding in the same direction as defendant's driver just prior to the accident. He stated that defendant's truck passed him on the left, moving slightly to the left of the center of the highway; then turning back to the right until, some dis-

tance beyond, it turned suddenly to the left, at the scene of the accident. The point in the highway where the collision occurred is in dispute. Thorne says that defendant's truck was just a few feet from the northwest corner when he heard the collision. He testified:

"I would say it was just a few feet from the northwest corner when I heard that crash, two or three or four feet. At that distance I was far enough away, maybe by judgment, two or three feet, isn't— but I would say very close to it. That is my best judgment, and up to that time I had not heard any crash at all. At the time that I heard that crash I saw a flash of fire underneath the motor of the eastbound truck, that is, the Western Michigan Transportation Company's. I heard the crash and saw a flash of fire. The two happened right together simultaneously, as soon as the eye and ear would permit."

There is a further dispute as to where the debris was after the accident. James Quick, son of the decedent, and Ernest Maddux, a resident of Ypsilanti and a highway commissioner, who was in charge of cleaning and sweeping the street after the collision, testified that all of the principal glass, metal, and wood on the highway was on the north side of the dividing line. The chief of police of Ypsilanti testified that there was debris on the south side of the highway; and Cyril Ray, police sergeant, testified that he traced tracks made by tires in an arc, starting at the north side of the highway, going south, and turning north again right up to the wheels of the truck driven by decedent. Conflicting claims are made with reference to the manner in which the trucks were damaged, as evidence of how the accident took place. But the photographs showing such damage are not completely persuasive

of the claim of either party; and, in any event, they are not conclusive.

In regard to the foregoing, we are of the opinion that the questions of fact as to how the accident occurred and matter relating to the negligence of defendant's driver and the contributory negligence of plaintiff's decedent were for the jury. If they believed plaintiff's witnesses, they could reasonably conclude that the collision took place on the north side of the highway and that the cause of the accident was the negligence of defendant's driver; if they believed defendant's driver and the witnesses sworn on behalf of the defendant, they could conclude that the fault rested with plaintiff's decedent. They decided in favor of plaintiff.

From the evidence with regard to the physical facts and the testimony of Dolph Thorne, the jury could draw reasonable inferences on the questions of the negligence of defendant's driver and the contributory negligence of plaintiff's decedent. There was no error on the part of the trial court in submitting these questions to the jury.

With reference to the claim that the trial judge erroneously prevented Vandenberg, defendant's driver, from giving evidence as to the facts surrounding the accident, this witness testified that he first saw decedent slumped over the steering wheel of his truck with his head down; that, when Vandenberg swung his truck to the left, plaintiff's deceased "straightened up and stared" at him. On cross-examination, he testified:

"By virtue of my lights I saw Mr. Quick slumped over the wheel. * * * and then I could also see him straighten up and stare at me. As he was coming down the grade, just a short ways from me, he was stooped like this, and then when my headlights went through his windshield and the gunning of the

motor, when he straightened right up and stared at me and gripped the wheel. I could see him do that through the headlights of his car, but we did not need any headlights, the street lights was almost right there, and you could see him. I could see him from the street lights and the headlights."

The trial court refused to permit Vandenberg to testify with regard to anything that occurred from the time he saw decedent "stare" at him up to the time of the first impact of the collision. In this the trial court was not in error. Defendant's driver could not testify as to any matter equally within the knowledge of the deceased. 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).

But defendant contends that it does not affirmatively appear that the matters with regard to which defendant's driver was asked to testify were equally within the knowledge of the deceased. See *In re Boyer's Estate,* 281 Mich. 618. Plaintiff's decedent, according to the witness, was looking directly at the oncoming car and its driver up to the instant of the collision. To say that it does not affirmatively appear that the matters with regard to the accident were equally within the knowledge of the decedent would be to hold that, although the deceased was in the exercise of his faculties of sight, it must be further proved that what he saw was within his knowledge. Such a conclusion carries the necessity of proof on the part of plaintiff's decedent to an unreasonable requirement. If a person looks, he is presumed to see what is within the range of his vision. If he looks and sees, it can be presumed that he had knowledge of what is happening, so far as his sense of sight could make him aware of it. In view of the testimony on the part of defendant's driver that plaintiff's decedent was looking directly at the approaching truck and its driver, we are in accord

with the holding of the trial court that the relevant facts with regard to the collision were equally within the knowledge of the decedent during the period from the time he first saw the truck up to the time of the crash. Any other construction of the provision of the statute would work an unreasonable hardship upon the plaintiff and would destroy the statutory presumption in such cases. It affirmatively appears from Vandenberg's testimony that deceased was looking directly at him from the time he was approximately 60 feet away until the first impact. The court refused to permit any testimony by Vandenberg with regard to what occurred during this brief interval. According to every reasonable implication from the testimony of the witness Vandenberg, what happened between the time plaintiff's decedent saw the oncoming truck and the time of the collision was equally within the knowledge of the deceased.

Complaint is made concerning the trial court's refusal to permit the cross-examination of the plaintiff regarding an agreement into which she entered with the Continental Casualty Company, the insurer of decedent's employer under the workmen's compensation act. The agreement provided that the attorney for the insurance company would try the case for plaintiff without cost to her and that, if she received more than $5,000 by such action, she would take that sum in full payment and waiver of her rights under the workmen's compensation act and would ratify her election to proceed at law against defendant in lieu of accepting compensation; that, if the amount recovered should be less than $5,000, plaintiff would either accept that amount as full payment and waiver of her rights under the act or deliver the said amount to the insurance company and accept compensation under the act; that, if no re-

covery were effected, she would have the right to proceed under the act for compensation to which she might be entitled, with the proviso that she would have the right to institute proceedings for compensation in which the defense of an election of remedies would not be made by the defendants therein, provided she assisted in good faith in the instant suit. The pertinent provisions of the workmen's compensation act are 2 Comp. Laws 1929, § 8454 (Stat. Ann. § 17.189), which provide:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

Under the above section, it was provided that the employee might elect to proceed against the third party in question, or against the employer for compensation, but not against both. If compensation is paid, the employer may enforce for his benefit, or that of the insurance company carrying the risk, the liability of such third person.

Plaintiff in this case received certain payments from the insurance company, which were called compensation. But any agreement for compensation, or compensation payments, in order to be valid, must be approved by the department of labor and industry. Payments received by private grant would not estop plaintiff from securing compensation accord-

ing to the provisions of the statute; and an agreement not to take compensation would be invalid without the approval of the department. Plaintiff did not assign her right of action; and she did not elect to take compensation, within the contemplation of the act. We fail to see how anyone would be prejudiced by such a transaction, except the insurance company. There certainly could be no prejudice resulting to defendant because of the transactions between plaintiff and the insurer.

On a review of the record, we are of the opinion that there was no error on the trial; and the judgment is accordingly affirmed, with costs to plaintiff.

Bushnell, C. J., and Sharpe and North, JJ., concurred with McAllister, J.

Wiest, J. (*dissenting*). Defendant's driver testified that the deceased was slumped over the steering wheel but raised his head and stared at him, and was not permitted to testify to what occurred after that on the ground it was equally within the knowledge of the deceased. In this ruling the court assumed that fact, and I think it was error. The court should have left that question to the jury and should have instructed the jury not to consider the evidence if found to have been equally within the knowledge of the deceased.

The judgment should be reversed and a new trial granted, with costs to defendant.

Chandler and Butzel, JJ., concurred with Wiest, J. The late Justice Potter took no part in this decision.