WRIGHT *v.* DELRAY CONNECTING RAILROAD COMPANY.

1. RAILROADS—NEGLIGENCE—SWITCHING OPERATIONS—COAL CAR INSPECTOR.

Defendant railroad's negligence in switching cars onto tracks of plaintiff's employer where plaintiff car inspector was on top of empty coal cars to see if they were in condition for use by his employer *held,* question for jury, where switching activities were performed at irregular intervals and no warning was given to plaintiff while performing a part of the regular procedure that had been adopted by his employer.

2. SAME — NEGLIGENCE — SWITCHING OPERATIONS — WARNING — PROXIMATE CAUSE — COAL CAR INSPECTOR.

Finding of jury that defendant railroad was negligent in conducting switching operations on tracks of plaintiff's employer without warning plaintiff coal car inspector, whose inspection was an operation regularly conducted for the employer and one requiring the presence of employees which should have been anticipated by the defendant, and that such negligence was a proximate cause of plaintiff's injuries *held,* supported by proofs adduced.

REFERENCES FOR POINTS IN HEADNOTES

[1]  44 Am Jur, Railroads § 441.
[2]  44 Am Jur, Railroads § 628.
[3, 6, 7]  3 Am Jur, Appeal and Error § 886.
[4]  38 Am Jur, Negligence § 192.
[5]  44 Am Jur, Railroads § 478.
[8]  15 Am Jur, Damages § 198.
Compensation from other source as precluding or reducing recovery against one responsible for personal injury or death.   95 ALR 575.
[9]  15 Am Jur, Damages § 382.
[10]  15 Am Jur, Damages § 206.

3. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

The testimony must be construed as strongly as reasonably possible in favor of the plaintiff in determining whether or not defendant's motion for a directed verdict should have been granted, even though some of the plaintiff's own testimony may not be altogether consistent with other testimony given by him.

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—ANTICIPATION OF NEGLIGENCE.

Contributory negligence cannot be imputed to a plaintiff for failure to anticipate negligent acts of a defendant.

5. RAILROADS—SWITCHING OPERATIONS—COAL CAR INSPECTOR—CONTRIBUTORY NEGLIGENCE.

Whether plaintiff coal car inspector was guilty of negligence in placing himself where he could be dislodged and injured when defendant railroad switched cars into tracks on premises of plaintiff's employer *held*, a matter for jury determination, since plaintiff was not bound to anticipate negligence on part of defendant and there was testimony that warning to him of danger came too late.

6. APPEAL AND ERROR—DIRECTED VERDICT—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

The Supreme Court is limited to deciding whether plaintiff was shown by the proofs to have been guilty of contributory negligence as a matter of law, where one ground of asserted error was the denial of motion for directed verdict on the ground plaintiff was guilty of contributory negligence as a matter of law.

7. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

Each case involving questions of negligence or contributory negligence must be judged on appeal on its own merits in accordance with applicable principles of law.

8. EVIDENCE—OPENING STATEMENT.

It was not prejudicial error for trial court to overrule objection to the introduction of testimony as to amount plaintiff had received from his employer for injuries received during employment because of defendant railroad's alleged negligence, where the receipt of workmen's compensation had been mentioned by counsel for both parties in their opening statements without objection.

9. TRIAL—INSTRUCTIONS—OPENING STATEMENT—EVIDENCE.

Trial court did not commit error by charging jury that plaintiff

would, if he recovered a judgment against third party tort-feasor, be required to repay his employer's workmen's compensation insurer the amount he had received from it, but that such amount had nothing to do with the determination of the question of liability and should be disregarded, where the fact of payment of such compensation had been noted in opening statements as well as in the proofs and closing argument of defendant's counsel.

10. DAMAGES—EXCESSIVE VERDICT—LOSS OF EARNINGS—PAIN AND SUFFERING.

   Verdict of $125,000 to 52-year-old man who was completely disabled by injuries negligently inflicted by defendant railroad *held*, within range of proofs showing large loss of earnings, pain and suffering, hospital and medical expense, and it does not appear that anything occurred in the course of the trial to create prejudice or bias on the part of the jury, nor that any such feeling entered into the determination as to the amount of recovery, hence, new trial may not be granted because of alleged excessive verdict.

Appeal from Wayne; Souris (Theodore), J. Submitted October 11, 1960. (Docket No. 52, Calendar No. 48,491.) Decided December 1, 1960.

Case by Lawrence A. Wright against Delray Connecting Railroad Company, a Michigan corporation, for injuries sustained while engaged in inspection work when thrown from coal car by railroad switching operations. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Richard G. Eubank,* for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy (A. D. Connor,* of counsel), for defendant.

CARR, J. On November 16, 1953, and for some time prior thereto, plaintiff was employed by Semet Solvay Division of Allied Chemical Corporation as a locomotive crane helper. Among his duties was the

inspection of empty hopper cars to determine if they could properly be loaded with coal which in the ordinary course of business was brought in by boat and unloaded at the employer's place of business. The switching of cars in the area was done by the defendant in the instant case whose duty it was to remove empty cars from the vicinity of coke ovens and place them in position to be loaded from the coal pile beside the track.

On the day in question plaintiff was undertaking to inspect empty coal cars for the purpose of ascertaining if they were in condition to be filled with coal. The top of said cars was approximately 11 feet above the ground and plaintiff climbed up a ladder to the top of one of the cars which he was required to inspect. It is a fair inference from the proofs that defendant brought to the section of the track where plaintiff was working, from time to time, empty coal cars to be inspected and loaded. While at the top of the car that he was inspecting, such an operation was conducted by defendant, the employees of which released the cars that were being moved from the control of the switching locomotive and allowed them to roll along the track toward the standing cars which plaintiff was inspecting. An impact occurred as a result of such method of operation, and plaintiff was thrown or caused to fall to the ground. The injuries received by him in the accident were serious and resulted in total disability for employment.

It was the claim of the plaintiff in his declaration and in his proofs on the trial that the defendant was negligent in releasing the cars that were being moved from the control of the locomotive and permitting them to run into the cars that plaintiff was inspecting, and was also negligent in failing to give him seasonable and timely warning of such action. On behalf of the defendant it was contended that the switching operation was conducted in the usual man-

ner, that plaintiff knew or should have known that empty cars might be brought in at any time to be inspected and loaded at the coal pile, that he put himself in a position of danger by standing on the ledge at the top of the car that he was inspecting, or walking along it, which ledge was approximately 5″ wide with a somewhat rounded or sloping outer edge, that he disregarded signals given by the operator of the crane who observed defendant's operation and realized that it was dangerous to plaintiff's safety, and that because of his acts and failure of reasonable precautions for his own safety plaintiff was guilty of contributory negligence barring recovery.

At the conclusion of plaintiff's proofs motion for a directed verdict was made by defendant, and denied. It was subsequently renewed, with like result. The case was submitted to the jury which returned a verdict in favor of the plaintiff in the sum of $125,-000. Motion for new trial was denied, and defendant has appealed claiming in substance that the proofs were insufficient to support a finding that it was guilty of negligence constituting a proximate cause of the accident, that plaintiff was guilty of contributory negligence as a matter of law, that, in consequence, the trial court was in error in denying the motions for a directed verdict, and that prejudicial error, requiring reversal, occurred in the course of the trial.

Were the proofs in the case of such character as to render the question of defendant's negligence an issue of fact for determination by the jury? As is ordinarily the situation in a case of this nature, the witnesses for the respective parties were not altogether in accord in their testimony. No claim is made, however, that defendant's employees warned plaintiff of the approach of the empty coal cars. Apparently it was assumed that he would keep watch for such movement and act in such manner as to avoid injury. Switching operations of the character

in question were performed at irregular intervals. On behalf of plaintiff it was claimed on the trial that he thought that warning would be given to him by defendant's employees in the event that empty cars being switched to the vicinity of the coal pile were released by the locomotive and permitted to roll against the standing cars that were being inspected.

Under the circumstances disclosed by the record it must be said that it was a question of fact for the jury to determine if defendant was guilty of negligence in conducting the switching operation in the manner indicated, or negligent, in view of such method, in failing to give plaintiff warning. The inspection of the empty cars before loading was a part of the regular procedure observed by Semet Solvay in its operations. The presence of employees engaged in such work should have been anticipated. It may not be said that the proofs were insufficient to support the finding of the jury as to defendant's negligence and that such negligence was a proximate cause of the injuries sustained by plaintiff.

This brings us to the more serious question as to whether the plaintiff was guilty of contributory negligence as a matter of law. Counsel for defendant assert on this appeal that plaintiff failed to exercise reasonable precautions for his own safety, and rely on testimony that he was working with his back to the oncoming cars, that he failed to seasonably heed the attempts of his fellow employee to warn him of the danger, and that he had negligently placed himself in a perilous position on the ledge of the coal car that he was inspecting. Reliance is placed on the testimony of defendant's witnesses to the effect that plaintiff appeared to be walking along such ledge. Such a claim is at variance with the testimony of plaintiff who denied that he was performing his inspection duties by walking along the ledge in ques-

tion.   The following excerpts from his testimony fairly indicate the nature of his claims:

"*Q.* And what happened then?

"*A.* Then I just got up on the top.   I couldn't see in from the side to see whether there was anything in it or not and I just got up on the top and I just got up on the railing there so I could look down in the car; and just as I got up on it there I stepped over just about 1 or 2 steps, just far enough that I could see into the center of that car.   That's when Jackowenko started blowing the whistle and he kept blowing the whistle.   I turned around to look to see what he was blowing for.   I thought maybe he was ready then to shift that car out so I couldn't make it out until I happened to look clear around back of me and here come them cars in on top of these other ones.

"*Q.* You saw them coming?

"*A.* Sir?

"*Q.* You saw them coming?

"*A.* Yes.

"*Q.* About how far away were they away from the first car when you first saw them?

"*A.* Well, they was about approximately a half a car length off maybe less.

"*Q.* What did you do?

"*A.* Well, I didn't have a chance to do anything. I was figuring on going back to the corner and go down the ladder or get inside of it.

"*Q.* You say you didn't have time to do anything?

"*A.* No.

"*Q.* Did you have any estimate as to how fast those cars were going?

"*A.* I think they were traveling around 15 or 20 miles an hour, anyhow.

"*Q.* What were you able to do after you saw the cars coming?

"*A.* Nothing.

"*Q.* What happened?

"*A.* Well, the cars hit together, banged together, and they bumped the whole string of cars, moved the whole string of them.

"*Q.* And what happened then?

"*A.* And it knocked me up in the air and I came back down and hit the top of the railing, bounced off there, and went down on to the ground, which is about 15 feet, anyhow."

Later in the course of the trial plaintiff, recalled to the stand as a witness in his own behalf, testified as follows:

"*Q.* Now, at the time that the cut of cars struck the cut of cars that you were on I would like to have you tell us specifically just where you were with relation to the ground, the top of the car, the end of the car, and the rail.

"*A.* I was right at the end of the car where the ladder is.

"*Q.* I will take one of these little models. You had climbed up the ladder at the end of the car?

"*A.* That is right.

"*Q.* Now, at the end of the car there is a rail that runs acrossways?

"*A.* That is true.

"*Q.* How far were you from that end rail?

"*A.* I had my one foot on that end because when I got up on it I put one foot back to the corner of the box or the car.

"*Q.* That would be the corner where the 2 ladders are?

"*A.* Yes.

"*Q.* And where did you put your other?

"*A.* Then I took the other and stepped out along that rail to get my balance.

"*Q.* You did that?

"*A.* If it wasn't far enough I stuck another foot out there further to balance myself.

"*Q.* Still leaving your first foot on the corner?

"*A.* That is right. That's where I had my foot.

"*Q.* From that point were you able to see down into the center of the middle hopper?

"*A.* I didn't have a chance to look down in there at that time.

"*Q.* You were hit at that time, that point?

"*A.* That is when the accident occurred.

"*Q.* Had you climbed up the rail or had you stepped over from the previous car?

"*A.* No, sir; I climbed up the ladder."

In determining whether the motion for a directed verdict in defendant's favor should have been granted the testimony must be construed as strongly as reasonably possible in favor of the plaintiff. This is true although some of his statements on the witness stand were not altogether consistent with other testimony given by him. *Yampolsky* v. *Smith,* 320 Mich 647. Under the disputed proofs it was a question of fact for determination by the jury as to plaintiff's position at the time of the accident. It must be borne in mind also, at least under his version as to the manner in which the accident happened, that he did not merely fall from the top of the coal car. It is not disputed that the accident happened because of the moving cars striking those that were standing still on the track. It is, likewise, true that plaintiff was not required to anticipate a negligent act on the part of the defendant. In *Winckowski* v. *Dodge,* 183 Mich 303, 312, it was said:

"Contributory negligence cannot be imputed to a plaintiff for failure to anticipate negligent acts of a defendant—no one need anticipate an unlawful act. In *Gilbert* v. *Burque,* 72 NH 521 (57 A 927), this thought is thus expressed:

" 'Where the position of the plaintiff who was run into by a vehicle going in the opposite direction was not dangerous, until the other traveler's act rendered it so, he is not chargeable with negligence as a matter of law because he did not see defendant or because he failed to anticipate that he would suddenly turn to the left, or because he did not instantly resort to some self-protecting expedient.' "

Whether plaintiff in the instant case was, as a matter of fact, guilty of negligence that contributed to his accident and injuries was for the jury to determine. It may not be said that the record does not support the finding made thereon. This Court is limited to deciding whether plaintiff was shown by the proofs to have been guilty of contributory negligence as a matter of law. Counsel have called attention to *Dahlerup* v. *Grand Trunk Western R. Co.*, 319 Mich 96. The factual situation there involved, however, was materially different than that presented under plaintiff's version of the facts in the instant case. There plaintiff deliberately placed himself in such position as to be in danger of being struck by cars being moved on the defendant's railroad. An analogous situation was presented in the prior case of *Wexel* v. *Grand Rapids & Indiana R. Co.*, 190 Mich 469, also cited, in which a directed verdict for defendant was sustained by this Court. Each case of this character must be judged on its own merits in accordance with applicable principles of law. We conclude that the trial court was not in error in denying defendant's motions for a directed verdict and in submitting to the jury the determination of the questions of negligence.

It appears from the record that plaintiff, following his injuries, was paid workmen's compensation by the employer's insurer. It is claimed that the trial judge committed reversible error in overruling an objection to a question as to the amount of compensation that had been received by plaintiff prior to the trial. The record before us suggests that some agreement was reached by counsel in consultation with the trial judge in chambers with reference to the matter of workmen's compensation and the position of the insurance company with reference thereto. Counsel for plaintiff in his opening statement to the jury referred to the insurance company

as a "concealed plaintiff" and further stated, apparently without objection on the part of defendant, that the total amount paid to date, including medical and hospital bills, was $9,684.45. Counsel for defendant in his opening statement referred to the fact that plaintiff had received workmen's compensation because of his injuries, further stating that plaintiff would continue to receive it for a number of years.

The question to which counsel for defendant specifically objected went solely to the amount that had been paid up to the date of the trial. As noted, counsel for plaintiff had already stated that amount in his opening remarks to the jury. In other words, the matter was already before the jury, and no objection was made to the opening statement. The specific agreement made between counsel at the outset of the trial with reference to the manner in which the workmen's compensation question should be handled is not set forth in the record, but it may be assumed that what was said and done without objection was within the scope of such agreement. Under the circumstances disclosed by the record we do not think that defendant is in position to claim that it was prejudiced by the action of the trial court in overruling the objection to the question, propounded to a witness on the trial, as to the amount paid to date by the insurance company.

In view of the fact that the matter of compensation had been brought before the jury, the trial court was not in error in charging that the plaintiff would, in the event of his recovery of a judgment, be required to repay to the insurance company the amount so received. This was in substance a statement of the law with reference to the matter.* The jury was further charged that the amount of such payments.

* See CLS 1956, § 413.15 (Stat Ann 1960 Rev § 17.189).—REPORTER.

should have nothing to do with the determination of the question of liability and should be disregarded. It may be noted also that the trial judge repeated in the charge the amount of the payment to date, namely $9,684.45, which was in accord with the statement of counsel to the jury at the opening of the trial, and with the testimony.

It may be noted further that in his closing argument to the jury the attorney representing defendant on the trial referred to the matter of workmen's compensation payments, stating in substance that plaintiff had received such payments for nearly 6 years and under the law would receive them for an additional 10 years at the rate of $30 per week. The insurance company was called the "silent plaintiff" and the jury was told that the company would get the "first money back if the verdict should go to the plaintiff". Apparently counsel was emphasizing the fact that plaintiff had his rights under the workmen's compensation act and would, if payments were continued, receive a total amount of $24,000. The trial judge was requested by counsel for defendant to charge the jury accordingly. Apparently the matter of workmen's compensation payments was relied on by counsel for the purpose of emphasizing that plaintiff would receive the amount referred to in the event that the jury did not decide in his favor in the pending case.

It is also argued that the amount of the verdict was excessive. At the time of the accident the plaintiff was approximately 52 years of age. He was, as the medical proofs indicated, completely disabled. Damages based on loss of earnings for his probable expectancy of life were large. He also underwent pain and suffering, and expense for medical and hospital bills. While the verdict was in fact a sizeable one, it was within the range of the proofs. It does not appear that anything occurred in the course of

the trial to create prejudice or bias on the part of the jury, nor that any such feeling entered into the determination as to the amount of recovery. Such being the situation, a new trial may not be granted for the reason urged.

The judgment rendered in the trial court is affirmed.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.

SOURIS, J., did not sit.