LEITELT IRON WORKS, *for use and benefit of* MICHIGAN MUTUAL LIABILITY COMPANY, *v.* DE VRIES.

1. APPEAL AND ERROR—COLLATERAL MATTERS.

    The ultimate loser in a case tried before a jury may not usually base reversible error upon voluntarily injected collateral matters which have been inevitably drawn before the jury.

2. TORTS—PARTIES—EMPLOYER—WORKMEN'S COMPENSATION INSURER —EXECUTORS AND ADMINISTRATORS.

    An employer and the workmen's compensation insurer may be joined with the personal representative of the deceased employee in an action for damages against a third party responsible for the injuries resulting fatally (CLS 1956, § 413.15).

3. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — EVIDENCE — QUESTION FOR JURY.

    An issue of fact for determination by jury as to issues of negligence and contributory negligence was presented by evidence adduced in action against crane owner, where it is shown that crane operator, decedent, lead man for steel erector, and 2 of latter's employees participated in threading and fastening of cable to hook assembly which came apart and resulted in fatal injuries to decedent (CLS 1956, § 413.15).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 797–807.
[2] 39 Am Jur, Parties §§ 29–33.
[3] 38 Am Jur, Negligence §§ 344–361.
[4–7] 58 Am Jur, Witnesses § 214 *et seq.*
[8] 16 Am Jur, Death § 176 *et seq.*

4. Witnesses—Matters Equally Within Knowledge of Deceased.
   Testimony of a witness would not be rendered incompetent by statute barring testimony as to matters equally within knowledge of deceased until it affirmatively appears that the fact, if true, was known to the deceased (CL 1948, § 617.65).

5. Same—Matters Equally Within Knowledge of Deceased—Objector's Burden of Proof.
   Whether or not a particular fact was equally within the knowledge of a decedent is not a matter of inference but must be affirmatively shown by the objector who has the burden of showing that the fact, if true, was equally within the knowledge of the deceased (CL 1948, § 617.65).

6. Same—Matters Equally Within Knowledge of Deceased—Hearing—Sight—Question for Jury.
   Whether or not a decedent heard or saw something as to which it is sought to present testimony of an opposite party would normally be a matter for consideration by the jury (CL 1948, § 617.65).

7. Same—Matters Equally Within Knowledge of Deceased—Objector's Burden of Proof.
   Error in the rejection or admission of testimony, even if technically established as being equally within the knowledge of an opposite party now deceased, is not reversible unless of such a character as to naturally prejudice the jury against the party objecting to its admission, especially where the matter involved was not in dispute, and the error, if any, did not result in a miscarriage of justice (CL 1948, §§ 617.65, 650.28).

8. Death—Damages—Social Security Benefits—Workmen's Compensation.
   Reversible error was not committed by trial judge in permitting defendants' counsel to introduce testimony, and argue therefrom, as to amount of social security benefits and workmen's compensation benefits received by plaintiff fiduciary in action against third-party tortfeasor, where plaintiff fiduciary had joined her decedent's employer and its workmen's compensation insurer as plaintiff, notwithstanding the joinder of such plaintiffs resulted in forcibly bringing to jury's attention distractions from the presented issues of negligence and the true measure of damages recoverable under the death act (CL 1948, § 691.582).

Appeal from Superior Court of Grand Rapids; Vander Ploeg (Claude), J. Submitted November 5,

1962.  (Calendar No. 16, Docket No. 49,232.)  Decided January 11, 1963.

Case by Leitelt Iron Works, a Michigan corporation, for use and benefit of Michigan Mutual Liability Company, a mutual insurance company, and Leona Ripmaster, administratrix of the estate of John Ripmaster, deceased, against Edward De Vries, Nicholas De Vries, Reinder De Vries and Bert De Vries, co-partners doing business as E. De Vries and Sons, for damages arising from the death of iron construction worker who fell as result of defective cable hitch in hoisting apparatus on September 1, 1955.  Verdict and judgment for defendants.  Plaintiffs appeal. Affirmed.

*Allaben & Massie* (*Keith A. Vander Weyden,* of counsel), for plaintiffs.

*Cholette, Perkins & Buchanan* (*Edward D. Wells,* of counsel), for defendants.

BLACK, J.  Numerous errors are assigned as supporting plaintiff-appellants' appeal for retrial of this jury-decided suit for wrongful death.  That the case was not tried as it might have been is fairly concludable.  That the brand of reversible error should be stamped on 1 or more of such assigned errors does not necessarily follow.

When collateral matters of no relevance are voluntarily injected into a jury-tried civil case, and the ultimate loser finds himself objecting to that which his collateral venture has inevitably drawn before the jury, his objection usually forms no base for an allegation of reversible error.  Trouble for these appellants started when they elected to join as parties plaintiff in prosecution of the cause which allegedly arose when the decedent expired.  That such parties,

agreeing together, were possessed of the right to so proceed is expressly declared in the first paragraph of the so-called third-party amendment of 1952 (CLS 1956, § 413.15 [Stat Ann 1960 Rev § 17.189]). That they might better have left the fiduciary to prosecute the suit as sole plaintiff, with damage inquiry directed exclusively to the true measure of what if anything was legally recoverable in behalf of the decedent's estate and his dependents, is now but doleful hindsight.

The decedent was a veteran rigger employed by plaintiff Leitelt Iron Works. He was Leitelt's "lead man," that is, he was in charge of "outside work" when Leitelt undertook to do rigging and overhead metal construction for others. Leitelt was engaged by the city of South Haven to remodel an elevator designed to carry coal to and from 2 coal silos, 72 feet high, on the premises of the city's power plant. The job undertaken by Leitelt required the services of a heavy crane and crane operator. Leitelt engaged defendants for such purpose on an hourly basis.[1] When the crane with operator arrived, and was finally set up for work with boom 110 feet in length, the decedent advised the defendant operator that he "wanted to ride the hook to the top" in order that he, decedent, might check the working height of the boom.

The "hook" is a weight-lifting assembly connected by steel cable—over the end of the boom—with a cable-winding drum. The drum is a part of the crane and is controlled by the crane operator from his seat in the cab of the crane. The hook assembly consists of a steel hook and a steel casting, weighing together about 100 pounds. The hook is attached to the casting by means of a crossbolt linking an

---

[1] Defendants' crane arrived with all of its equipment, including the presently mentioned hook assembly and all cable necessary to connect the crane's cable winder with such assembly.

"eye" bored through the upper portion of the hook with 2 "eyes" bored through the lower flanges of the casting. The casting provides an opening, at the top, through which the far end of the crane's cable is threaded down, around, and out again at the top. A steel wedge is inserted, inside the casting, in such manner as to press such looped end of the cable firmly between the wedge and the upward converging inner walls of the casting, thus fastening the hook assembly to such end. Looking at the exhibit drawings, it is readily perceivable that, the cable having been *properly* threaded through and wedged inside the casting, the greater the lifting pull the more secure becomes the fastening of cable to hook assembly. See sketch at the margin, furnished by agreeing counsel.

The threading and fastening of the cable to hook assembly was done by the decedent, 2 of his fellow employees, and the defendant crane operator. For plaintiffs it is claimed that the crane operator was responsible for what turned out to be a defective job of securing defendants' cable to their hook assembly. For defendants it is claimed that decedent and his coemployees were exclusively responsible therefor. The proofs on that score presented, for jury determination definitely, the issues of negligence and contributory negligence as charged by the respective parties. Thus we pass summarily plaintiffs' contention that the trial judge should have directed a verdict of liability.

The hook assembly and cable having been linked as indicated, decedent stepped into the hanging hook and, holding to the taut cable, signalled "lift" to the crane operator. Standing thus with weight bearing on the hook, the decedent was carried to a height near the top of the silos. Then, the lift having been stopped, the hook assembly suddenly slipped free from the cable. The assembly and the decedent

plunged to the ground. Death ensued shortly after.

The initially posed question is whether Judge Vander Ploeg erred reversibly when he permitted the defendant crane operator to testify, over objection, to certain matters of which the decedent is said to have had like knowledge. Two phases of the operator's testimony are questioned as incompetent under the statute.[2] The first dealt with operation by him of the crane from start of the lift to the time of tragedy. The second was testimonial relation of the fact and result of a "test" made by him during the trial. The "test" disclosed effort to ascertain—by repeating the process of lifting a like hook with like equipment—how long in point of estimated time it took to lift the decedent and the hook assembly up to the height where the cable slipped free.

The first of these phases presents the question directly. The second depends upon solution of the first since both arise from that part of the crane operator's testimony which, in sum, described how he manipulated the crane's operating mechanism and lifted decedent and the hook assembly to the height and point of calamity. It was shown that decedent was "watching" the crane operator during the lift. Upon that premise and the assumption that decedent knew the lifting speed as well as did the operator, and knew as well whether there was anything unusual about the lift and its stop, it is contended that certain questions propounded to the operator drew forth incompetent testimony.[3]

As a sort of prelude to discussion and determination of the posed question, we observe that trial judges have no easy task when called upon to rule

[2] CL 1948, § 617.65 (Stat Ann § 27.914).—Reporter.

[3] The trial judge did not overrule all of plaintiffs' objections to such testimony. Some were sustained and some were overruled. As to those overruled the question of competency was submitted to the jury for determination in accordance with instructions which were eminently proper if, of course, such overrulings were proper.

Sketch showing cable
& wedge prior to being
seated in the socket

Cable to Crane

5/8" Steel Cable

To Seat Wedge

Half Section of Socket

Wedge

that question after question, addressed to an opposite party survivor in a tort case, call or do not call for answers which as to actual fact are equally known to the decedent. The point came to initial full treatment in *Noonan* v. *Volek,* 246 Mich 377, 381, 382, a typical suit for negligence. The Court said that the statutory bar, in its application to tort cases, "is fraught with difficulty in determining what knowledge the deceased had of a particular event, for the bar is not up until it affirmatively appears that the fact, if true, was known to the deceased." *Noonan* was followed and applied in the cases of *Hanna* v. *McClave,* 271 Mich 133, 140; *In re Boyer's Estate,* 281 Mich 618, 620; *Kalbfleisch* v. *Perkins,* 282 Mich 27, 29; *Benaway* v. *Pere Marquette R. Co.,* 296 Mich 1, 5, and, while it is not too easy to reconcile some of them with *Case* v. *Klute,* 283 Mich 581, 584, 585; *Quick* v. *Western Michigan Transportation Co.,* 294 Mich 402, 407, 408; *Davis* v. *Jermstad,* 350 Mich 439, 442; and *Gabrish* v. *Morse,* 361 Mich 39, 41, 42, two dependable conclusions stand forth. They are that knowledge of the decedent cannot be "inferred" (*Noonan* at 382; *Hanna* at 140; *Lapachin* v. *Standard Oil Co.,* 268 Mich 477), and that the objector carries the burden "of showing that the fact, if true, was equally within the knowledge of the deceased." (*Noonan* at 382.)

Human knowledge becomes a matter of esoterics when the person charged therewith is not around to relate its extent and has left no aidful word, or writing, or symbol. And when such knowledge is said to have been imparted during emergent circumstances immediately preceding violent death, the difficulty of ascertainment of the extent or nature thereof increases unto conjecture. Moreover, when the judicial inquiry is directed to the senses of sight or hearing of such departed person, doubt grows,

usually to that degree which dictates submission of the issue of knowledge to the jury.

The trial judge was probably right in resolving the issue as one for jury consideration, yet we prefer to rest decision upon the mature rule that error in the admission or rejection of testimony, even if technically established, is not reversible unless it is "of such a character as naturally to prejudice the jury against the party objecting to its admission." (*McKinnon* v. *Gates*, 102 Mich 618, 621; *Miskiewicz* v. *Smolenski*, 249 Mich 63, 74; *Edison Illuminating Co.* v. *Misch*, 200 Mich 114, 124.) As in *Belmer* v. *Boyne City Tanning Co.*, 160 Mich 669, 677:

"We have examined the portions of the record referred to by counsel and are not satisfied that if the rules of evidence were violated, which is doubtful, defendant was prejudiced thereby."

No witness, sworn by any party, testified to facts—distinguished from opinions—which stood at variance with or contradicted the questioned testimony of the defendant crane operator. No witness testified that the rate of speed of the lift, or the manner or nature of the stopping of the lift when the decedent reached the desired height, or anything else done by the operator after plaintiff's decedent signalled "lift," was unnatural, or unusual, or indicative of negligence. We are left in these circumstances with the inescapable conclusion that the cause of tragedy lay either (a) with poorly fitting hook assembly parts, or (b) faulty assembly by some one or several, decedent possibly included, of properly fitting parts. Thus there is no good reason for holding that the testimony of the crane operator, as to what was done by him after he was seated in the crane cab, hurt or prejudiced the plaintiffs' case. The error of admission thereof, if it was error, was harmless under the quoted rule; also under the stat-

ute (CL 1948, § 650.28 [Stat Ann § 27.2617]). As in *Tregonning* v. *Castantini*, 243 Mich 233, 238, all such questioned testimony "pertained to matters about which there was no substantial dispute and it was not prejudicial."

The last mentioned statute should be applied here as in *Metcalf* v. *Peerless Laundry & Dye Co.*, 215 Mich 601, 613, 614:

"[CL 1929,] § 14565 [now said section 650.28] provides that no case shall be reversed on the ground of the improper admission of evidence, 'unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.' We have recently applied this rule in both criminal and civil cases. In the case of *Link* v. *Fahey*, 200 Mich 308, 312, a similar question was considered and it was said:

" 'A careful reading of the record impresses us with the belief that no different result would have been reached by the jury if the alleged objectionable testimony had been rejected. Independent of such testimony, plaintiff had sustained his theory of the case, by what appears to us to be a clear preponderance of the evidence. Assuming, then, that the declarations of the driver of the automobile, made soon after the collision, should have been excluded as hearsay or mere narrative of a past event, we are still of the opinion that its admission, even if erroneous, was not prejudicial.'

"We think that language applicable to the situation here. We cannot say that the error here complained of has resulted in a miscarriage of justice."

That such testimony of the crane operator may have been barred by the dead man's statute does not form an exception to the foregoing general rule. The error of admission thereof, if it was error, was fully as harmless as that which the Court considered in *Kangas* v. *Champion Iron Co.*, 228 Mich 237, 240;

*In re Orr's Estate,* 297 Mich 37, 40, and *Edwin S. George Foundation* v. *Allen,* 320 Mich 552, 562.

The remaining and stressedly most important specifications of error are that the trial judge erred reversibly in permitting cross-examination of the plaintiff fiduciary as to the fact, amount and duration of social security allowances which had been paid and would be paid "for me and my son, my young son gets that also" (at trial time the total was shown to be $156 per month); in permitting defense counsel to inject into the case "the workmen's compensation payments she was receiving," and in permitting defense counsel to jury-argue the injected subject of payment of, and future availability of, workmen's compensation benefits.

That all such matters should have been kept out of the case; that the evidentiary inquiry into the subject of damages should have been confined to proof or disproof of the pecuniary loss which in consequence of the death was suffered by the decedent's estate and his dependents (see *Chicago & N. W. R. Co.* v. *Bayfield,* 37 Mich 205 [16 Am Neg Cas 87], and *Staal* v. *Grand Rapids & Indiana R. Co.,* 57 Mich 239); that the fact and extent of life insurance, social security allowances and workmen's compensation benefits, all such having been paid for by the decedent, or his employer, or both, should not have been dragged in before the jury (see *Lebel* v. *Swinciki,* 354 Mich 427; *Wright* v. *Delray Connecting R. Co.,* 361 Mich 619; *McCullough* v. *Ward Trucking Co.,* 368 Mich 108); that such insurance, allowances, and benefits were "not intended to operate to the benefit of anyone negligently or otherwise wrongfully causing the death" (quotation from *Lebel* at 433, 434), and that no reversible error resulted from the proof and jury argument of such proof, are conclusions we must reach by force of principles governing review of law cases.

In the first place, plaintiffs having elected to sue in the names of the employer, the employer's insurer, and the decedent's fiduciary, they by such act brought forcibly to jury attention what should not have distracted the jurors from the presented issues of negligence and contributory negligence and the true measure of damages which, if liability be adjudged for wrongful death, became recoverable by the plaintiff fiduciary under section 2 of the death act (CL 1948, § 691.582 [Stat Ann 1959 Cum Supp § 27.712]). But for such act defendant would not have received the advantage to which the Court alluded in *Union Ice Co.* v. *Detroit & M. R. Co.*, 178 Mich 346, 351 (quoted and followed in *Robinson* v. *Township of Wyoming,* 312 Mich 14, 26); that of showing and arguing that an insurance company "would participate in any judgment which might be rendered."

In the second place, and save only as to the subject of social security, plaintiffs' counsel themselves injected all these extraneous matters into the case. Having proved the amount and expenditure of the decedent's life insurance, the extent of participation of the compensation insurer in payment of the expenses of funeral and burial, and having questioned the plaintiff fiduciary as to the reimbursable amount which in event of recovery would become payable to the plaintiff compensation insurer,[4] counsel for plaintiffs are in no position to complain that defense counsel added, to the nearly filled pot of irrelevance, the equally irrelevant subject of social security benefits, or to complain that defense counsel made effective capital of the pot during jury argument. Indeed,

---

[4] Plaintiffs' counsel, questioning the plaintiff fiduciary:

"*Q.* You understand also that under the law, any amount you recover here must first be paid back to the Michigan Mutual Company to reimburse them for what they have paid you?

"*A.* Yes.

"*Q.* That amounts to something like $8,200–8,300 up to date?

"*A.* That is right."

in these circumstances of windfallen manna, it would be surprising had counsel failed to argue that responsibility for the tragedy "should not be shifted from plaintiff compensation carrier to the defendants."

Judgment affirmed. Costs to defendants.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, and SMITH, JJ., concurred with BLACK, J.

SOURIS, J. (*concurring*). I agree with Mr. Justice BLACK, for the reasons stated in his opinion, that plaintiffs were not entitled to a directed verdict on the issue of liability and that it was not reversible error to admit the crane operator's testimony concerning matters claimed to be equally within the knowledge of the decedent. However, for reasons set forth in my opinion in *McCullough* v. *Ward Trucking Co.*, 368 Mich 108, and for other reasons indicated below, I cannot join in those portions of Justice BLACK's opinion which relate to evidence of and jury argument on decedent's widow's receipt of workmen's compensation benefits.

This record discloses plaintiffs made no objections in the trial court to the admission of such evidence. In fact, both counsel examined the administratrix with reference to her receipt of such benefits with only 1 presently immaterial objection,—and that by defendants' counsel. Defendants' counsel elicited from the administratrix the amount of the weekly workmen's compensation benefit she received as decedent's widow. Plaintiffs' counsel then put in evidence the amount paid to date of trial and the period during which benefit payments would continue.

As in *Wright* v. *Delray Connecting R. Co.*, 361 Mich 619, 628, 629, the evidence regarding workmen's compensation benefits got into the case through the active efforts of both counsel. In *Wright*, both coun-

sel took the case as they found it at the conclusion of proofs and argued to the jury with reference to the workmen's compensation benefits within the limits of the evidence. Here, however, at conclusion of proofs, in the absence of the jury and at defense counsel's request, the trial judge ruled it would be improper for plaintiffs' counsel to refer to the amount of compensation paid to the widow in his argument to the jury. Plaintiffs' counsel was permitted to argue that workmen's compensation benefits had been paid the widow, that she was not precluded thereby from suing to recover her damages, and that the compensation benefits were not adequate. However, when he mentioned the amount of the weekly benefit (put in evidence by the defense), he was prevented from pursuing the matter further by defense counsel's objection, which the trial judge sustained.

Notwithstanding my belief that this ruling was erroneous, for reasons expressed in *McCullough* v. *Ward Trucking Co., supra,* I do not believe it justifies our reversal. The jury returned a verdict of no cause, a verdict well within its right on the proofs in this record. I am not prepared to say on this record that barring, even erroneously, jury argument on the amount of weekly benefits prejudicially affected the jury's verdict against plaintiffs on the issue of liability.

Affirmed. Costs to defendants.

O'Hara, J., took no part in the decision of this case.