PEOPLE *v.* DURKEE.

1. CRIMINAL LAW—PRELIMINARY EXAMINATION—RES GESTAE WITNESS—LACK OF MEMORY.

The mere fact that at the preliminary examination a *res gestae* witness claimed not to have remembered answers she had given to the investigating officer 2–1/2 days after accident in which 3 persons were killed would not excuse the people from calling her at the trial as the people are not required to decide that such then claimed lack of memory will also be claimed at the trial of person charged with felonious driving (CL 1948, § 767.40a).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 3]  20 Am Jur, Evidence § 661 *et seq.*
      58 Am Jur, Witnesses § 3.
[4, 5]  58 Am Jur, Witnesses § 674 *et seq.*
      20 Am Jur, Evidence § 458.
[6]  58 Am Jur, Witnesses § 633.
      20 Am Jur, Evidence § 458.
[7]  53 Am Jur, Trial §§ 775–786.
[8]  53 Am Jur, Trial §§ 676, 677.
[9]  20 Am Jur, Evidence §§ 245 *et seq.*, 458.

2. SAME—FELONIOUS DRIVING—PASSENGER AS RES GESTAE WITNESS.
   Passenger in front seat of car involved in prosecution of alleged driver for felonious driving of the car involved in accident in which 3 persons were killed was a *res gestae* witness not within the cumulation exception to requirement that *res gestae* witnesses be called (CL 1948, § 750.324).

3. SAME—RES GESTAE WITNESS.
   It is just as necessary to call a *res gestae* witness in prosecution for crime in order to protect the interests of the State as it is to protect the accused against a false accusation.

4. WITNESSES—LOSS OF MEMORY—IMPEACHMENT.
   A witness who states that he does not remember cannot be impeached by the showing of former statements regarding the facts which he claims not to have remembered, and the introduction of such prior statements would be of no value as affirmative evidence of the facts stated.

5. SAME—LOSS OF MEMORY—USE OF PRIOR STATEMENTS.
   It is improper, by interrogation, to call attention to the contents of statements theretofore made by witness and which would tend to establish the case of the party calling him, where the witness fails to testify as expected and gives no positive testimony against party calling him.

6. SAME—CROSS-EXAMINATION.
   Cross-examination of *res gestae* witness directed toward facts to which the witness did not testify and not to that which the witness had testified was improper, especially where the cross-examination elicited a statement not made under oath and not made in the presence of defendant in prosecution for felonious driving (CL 1948, § 750.324).

7. CRIMINAL LAW—FELONIOUS DRIVING—INSTRUCTIONS—CREDIBILITY OF WITNESSES—RES GESTAE.
   Instruction respecting weight to be given to the testimony of the various witnesses at the trial in a criminal prosecution for felonious driving, which failed to caution jury that testimony of *res gestae* witness in respect to a statement she had made to investigating officers 2-1/2 days after accident in which 3 persons were killed and which statements she did not recall having made could not be considered as substantive evidence as to who was driving *held*, reversible error, where it is probable the jury did consider such statement as substantive evidence of the guilt or innocence of the accused.

8. SAME—NEGLIGENT HOMICIDE—INSTRUCTIONS—BURDEN OF PROOF.

Instructions given in prosecution for felonious driving *held*, not prejudicial and reversible error by placing burden of proof on the defendant who was convicted of negligent homicide (CL 1948, § 750.324).

9. SAME—NEGLIGENT HOMICIDE.

Statements which had been made by accused to investigating officers after accident in which 3 persons were killed were properly received in prosecution for felonious driving in which accused was convicted of negligent homicide (CL 1948, § 750-.324).

Appeal from Kent; Vander Wal (John H.), J. Submitted December 5, 1962. (Calendar No. 99, Docket No. 49,384.) Decided April 5, 1963.

Eldred Durkee was convicted of negligent homicide. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Eugene Krasicky,* Solicitor General, *Richard N. Loughrin,* Prosecuting Attorney, for the people.

*Mitts, Smith & Haughey (Sherman H. Cone,* of counsel), for defendant.

KELLY, J. Appellant stood trial in the circuit court for Kent county on an information charging that he negligently, unlawfully and feloniously drove an automobile north on Freeport road and failed to stop at a stop street intersection, thus colliding with John Miller's car and causing the death of John Miller.[1] Two other persons were killed in the same accident.

Two witnesses were called to testify as to how the collision occurred, namely: defendant and Sharon Kaufman.

---

[1] See CL 1948, § 750.324 (Stat Ann 1954 Rev § 28.556).—REPORTER.

Sharon Kaufman, who was riding in the front seat of the car at the time of the collision, testified that she had no recollection of the collision, nor did she remember making a statement to the deputy sheriff in the hospital after the collision.

Appellant testified he did not remember anything about the accident until he woke up in the hospital the following Thursday night; that he was not driving the car at the time of the accident and that the car was not proceeding north on Freeport road, as claimed by the people, but was traveling easterly on M–50 and that, therefore, the accident was caused by the wrongful acts of John Miller.

The statute (CL 1948, § 767.40a [Stat Ann 1954 Rev § 28.980(1)]) states: "Witnesses whom the people are obliged by law to call as *res gestae* witnesses may be impeached the same as though such witnesses had been called by the respondent."

When Sharon Kaufman testified that she had no recollection of being questioned at the hospital by the deputy sheriff, the prosecuting attorney asked the right to cross-examine under the statute. Over objections the court granted the request, stating:

"Under this statute she may be interrogated as to the questions and answers that she gave to the deputy sheriff and it is up to the jury to determine whether or not she has forgotten it, whether she had amnesia or possibly forgotten about it. It is a question for the jury. I don't know."

Witness was interrogated whether 3 questions were asked her approximately 2–1/2 days after the accident by the investigating officer and whether she gave answers as follows:

"*Q.* Can you remember traveling on Freeport road?

"*A.* Yes, I can remember going on Freeport road as they were going to take me home."

"*Q.* In what direction were you going?

"*A.* Going north on Freeport road at that time."

"*Q.* Can you tell me how the rest of the people were sitting in the car?

"*A.* Eldred (defendant) was driving. William Rose was on the right side sitting next to me. I am not sure how Dwayne Durkee and Lentz were sitting in the back, but I believe Dwayne was sitting on the left and Lentz was sitting on the right side."

The witness denied having any recollection of the conversation with the deputy sheriff. The deputy sheriff was then called and testified that the questions were asked and that the witness gave the answers, as stated above.

The main question presented in this appeal is whether reversible error was committed in bringing to the attention of the jury the answers the deputy sheriff testified witness Sharon Kaufman made in reply to his questions.

The people, in their brief, justify their conduct at the time of trial by stating:

"Now it certainly cannot be said that at the time Sharon Kaufman was called as a witness, the prosecutor knew that she had no recollection of the facts surrounding the accident. It is submitted that Sharon Kaufman was called as a witness by the prosecution in good faith and that her testimony surprised the people so that they were forced to impeach her under the provisions of CL 1948, § 767.40a (Stat Ann 1954 Rev § 28.980[1]).

"It is noted that this was allowed by the court who had ample opportunity to observe the witness' demeanor, willingness to testify, manner of conducting herself and finally, her forthrightness in giving the answers to the various questions put to her.

"The people, at the time of trial, had in their possession a statement given by Miss Kaufman and were certain that she could give testimony material

to the facts in question. A further examination of the record reveals that the manifest purpose in calling her as a witness was to show as an element of proof that the respondent was driving the vehicle at the time the events in question occurred.

"It is submitted that the impeachment of Sharon Kaufman was proper and is directly within the statute. She being an eyewitness to the entire occurrence and a material witness with respect to the case."

Opposing plaintiff's position, we quote the following from defendant's brief:

"The mere fact that Sharon Kaufman was in the automobile at the time of the accident did not make her a *res gestae* witness. She was a *res gestae* witness and one whom the prosecution was required to call only if she could give testimony directly bearing upon the facts in question. This she could not do. * * *

"Moreover, it is submitted that there was no basis for impeachment since the witness had at no time made any contradictory statements. The statement that she did not recall any conversation with the officer did not deny that such conversation took place. * * *

"It is submitted, therefore, that this testimony was testimony concerning a collateral matter not subject to impeachment, that no proper basis for impeachment existed, and that the use of hearsay evidence in this fashion was, therefore, so prejudicial to the rights of the accused as to require reversal."

Endeavoring to justify the method used in the cross-examination of the witness, the people cite 5 Michigan decisions[2] and appellant calls our attention to 7 Michigan cases.[3] None of these cited cases

[2] *People* v. *Connor,* 295 Mich 1; *People* v. *Keywell,* 256 Mich 139; *People* v. *Hill,* 236 Mich 672; *People* v. *Hoffmann,* 142 Mich 531; *Knowles* v. *People,* 15 Mich 408.

[3] *People* v. *Fleish,* 321 Mich 443; *People* v. *Kayne,* 268 Mich 186; *People* v. *Bartlett,* 312 Mich 648; *People* v. *Barrette,* 233 Mich 615; *People* v. *Schaner,* 302 Mich 6; *Rodgers* v. *Blandon,* 294 Mich 699; *People* v. *Thomas,* 359 Mich 251.

presents a factual background similar to the present case.

The record discloses that the witness at the preliminary examination testified: "I don't remember being in the accident. I remember afterwards when I woke up, they told me I had been in an accident."

The witness's failure to remember does not cause us to agree with appellant's statement "that the mere fact that Sharon Kaufman was in the automobile at the time of the accident did not make her a *res gestae* witness. She was a *res gestae* witness and one whom the prosecution was required to call only if she could give testimony directly bearing upon the facts in question. This she could not do."

Whether the people "were certain that she could give testimony material to the facts in question" or not, they were obliged to call her as a *res gestae* witness and would have been remiss in duty if they had concluded that the mere fact that she testified at the preliminary examination she did not recollect, she would also fail to remember when questioned at the trial.

Her testimony was the only possible testimony available, besides defendant's, and certainly would not come within the cumulation exception referred to in *People* v. *Kayne,* 268 Mich 186, 194:

"Instead the rule is that, apart from cumulation of testimony, any *res gestae* witness should be indorsed and called by the prosecution if the testimony of such witness is reasonably necessary to protect the accused against a false accusation."

It is just as necessary to call the witness to protect the interests of the State as it is to protect the accused against a false accusation.

A case very similar to the present case was decided by the California appellate court.[4] The witness was

---

[4] *Anthony* v. *Hobbie* (1948), 85 Cal.App 2d 798 (193 P2d 748).

driving the vehicle in which decedent had been riding, and was sitting in the car at the time defendant's northbound car struck and killed decedent as he was crossing the highway. The witness testified sketchily to matters prior to the accident, but claimed she remembered nothing at the time of the accident. The court said (p 804):

"Where a witness merely states that he does not remember he cannot be impeached by the showing of former statements regarding the facts which he claims not to have remembered. In any event the introduction of such prior statements would be of no value as affirmative evidence of the facts stated but would only serve to impeach the statement that the witness does not now remember. Thus there would be no introduction of any positive evidence by the admission of the former statements concerning the facts of the accident."

A police officer, present at the scene of an accident, called by defendant at trial, stated he could not recall whether plaintiff had made any statement to him. Defendant's counsel was permitted to show witness his own signed statement and witness was required to read it. Thereafter he still insisted he could not recall. The New Jersey court in *Ciardella* v. *Parker* (1950), 10 NJ Super 537 (77 A2d 496), held (syllabus 10):

"Use of written statement to refresh memory was then at an end, and thereafter it was improper to call attention to contents by way of interrogation."

In *State* v. *Catsampas* (1911), 62 Wash 70 (112 P 1116), in a charge of mayhem where a State's witness, after detailing the circumstances of a fight between the accused and the prosecuting witness, testified he did not know what accused said after the fight, the court held it to be error to permit the State's attorneys to testify in rebuttal that the witness had

told them that accused had said after the fight that he had done something to the prosecuting witness.

*People* v. *Floyd* (1926), 78 Cal App 11 (247 P 917), is an impeachment case. There the court held (Pacific syllabus 11):

"Where witness because of defective memory fails to testify as expected, but gives no positive testimony against party calling him, his former statements which would tend to establish case of party calling him are inadmissible."

In *State* v. *Phillips* (1927), 141 Wash 648 (251 P 864), the court held that where the State's witnesses denied having made statements that they purchased liquor from defendant, admission of hearsay testimony that witnesses had made such statements was held as error in that the evidence sought to be impeached was purely negative. The court held the impeaching testimony related to alleged variant declarations of the witnesses not made in the presence of defendant and was purely negative and that no affirmative testimony concerning the purchase of liquor was offered by them.

The effort to impeach Sharon Kaufman was purely negative, because it was not directed toward facts the witness testified to but rather toward facts to which the witness did not testify.

From the court's ruling that the people could cross-examine because "it is a question for the jury," throughout the trial, it is apparent that both the court and the prosecuting attorney improperly proceeded on the theory that the jury in determining guilt or innocence, should know what the witness informed the officer in regard as to who was driving and in what direction the car was traveling at the time of the collision, even though the statement was not made under oath and not made in the presence of defendant.

The court's instruction in respect to the weight to be given to the testimony of the various witnesses is as follows:

"Now as you are the sole judges of the facts, you are the sole judges of the credibility of the witnesses which means the weight that you will give to the testimony of any particular witness, the force of their testimony, what credit you shall give the testimony of any and all of the witnesses that were presented here in this trial. And in determining the credibility, you may take into consideration their interest or lack of interest in the outcome of this case; you may take into consideration their opportunity or lack of opportunity to know the facts; you may take into consideration their conduct and demeanor on the witness stand, and you may apply such other tests that may come to your mind to determine the weight that will be given to the testimony of any particular witness, and it is for you to determine what weight is to be given, and it is for you to determine wherein the truth lies."

The instruction did not caution the jury that Sharon Kaufman's testimony in respect to her statement given at the hospital could not be considered as substantive evidence, and it is not only possible, but probable, that the jury considered the statement as substantive evidence of the guilt or innocence of the accused.

Under this record we conclude that reversible error was committed.

We do not agree with appellant that the court erroneously instructed the jury thus placing the burden of proof upon the defendant. Appellant's complaint in this regard can be eliminated at retrial.

The court did not err in allowing the investigating officer to testify in regard to what defendant told him shortly after the accident.

The conviction is set aside and the case is remanded to the lower court for new trial.

Carr, C. J., and Dethmers, Black, Kavanagh, Souris, and Otis M. Smith, JJ., concurred.

O'Hara, J., took no part in the decision of this case.