HILL *v.* HARBOR STEEL & SUPPLY CORPORATION.

1. Sales—Implied Warranty—Privity.

Lack of privity of contract does not bar a plaintiff's suit on an implied warranty.

2. Same—Implied Warranty—Evidence—Negligence—Breach of Warranty.

Negligence need not be proved as a prerequisite to recovery in an action for breach of an implied warranty, but it is necessary to show a breach of the warranty.

---

References for Points in Headnotes

[1] 46 Am Jur, Sales § 306.
[2] 46 Am Jur, Sales § 309.
[3] 46 Am Jur, Sales §§ 309, 376.
[4] 46 Am Jur, Sales §§ 306, 309.
[5] 5 Am Jur 2d, Appeal and Error § 623.
  53 Am Jur, Trial §§ 824, 827.
[6] 38 Am Jur, Negligence § 181.
  35 Am Jur, Master and Servant § 528.
[7] 53 Am Jur, Trial §§ 539, 579.
[8] 31 Am Jur, Jury § 95.
[9] 35 Am Jur, Master and Servant § 528.
[10, 11] 16 Am Jur, Death §§ 302, 363.
[12] 53 Am Jur, Trial § 579.
  38 Am Jur, Negligence §§ 362, 370.
[13] 46 Am Jur, Sales §§ 803, 814, 815.
[14] 38 Am Jur, Negligence § 90.
  46 Am Jur, Sales §§ 803, 814, 815.
[15] 38 Am Jur, Negligence § 285.
[16] 39 Am Jur, New Trial §§ 201, 202.
[17] 15 Am Jur, Damages § 201.
  Prejudicial effect of bringing to jury's attention fact that plaintiff in personal injury or death action is entitled to workmen's compensation benefits.  77 ALR2d 1154.
[18] 58 Am Jur, Witnesses §§ 775, 776, 780, 781.
[19] 20 Am Jur, Evidence §§ 1177, 1180.
[20] 39 Am Jur, New Trial §§ 117–119, 129.

3. Same—Breach of Warranty—Manifold Welding Unit—Defective Design.

Dismissal of count for breach of warranty in action by administratrix of estate of man who was killed when attempting to open the cabinet of a manifold welding unit which had been designed and built by defendant manufacturer expressly for deceased's employer to contain oxygen and acetylene tanks *held*, error, where there was evidence presented from which the jury could have found the death was proximately caused by defects inherent in the unit as it was supplied.

4. Same—Valves for Welding Apparatus—Finding of Jury—Evidence.

Trial court's erroneous dismissal of warranty count against defendant manufacturer of valves for welding apparatus for lack of privity was not reversible error, where jury specifically found valves made by such defendant were not defective, and such finding was supported by evidence adduced.

5. Appeal and Error—Correction of Instructions.

Credence given by Supreme Court to claimed error in instructions depended to a considerable extent upon counsel's diligence in seeking correction of the instructions while time remained to set things right in the jury room under former practice, but now counsel must object to such errors before jury retires if he expects to rely thereupon for reversal (GCR 1963, 516.2).

6. Negligence—Contributory Negligence.

Contributory negligence, to defeat a right of action against a tort-feasor, must be negligence of the injured party himself, not that of a fellow employee.

7. Trial—Instructions—Evidence.

Instructions to the jury must be fashioned to meet the factual demands of the particular case in which they are given, and the law pertinent to the case should be related in a meaningful manner to the evidentiary facts of the case.

8. Jury—Selection—Legal Training.

Juries are so selected as to exclude therefrom persons who have been exposed to legal training and concepts.

9. Negligence — Employer or Fellow Employee — Proximate Cause.

The negligence of a decedent's employer or of his fellow employee would not preclude the administratrix of the decedent's estate from recovery in an action against a tort-feasor whose negligence proximately caused the death.

10. DEATH—PRESUMPTION OF DUE CARE—CIRCUMSTANTIAL EVIDENCE
—EYEWITNESSES.

Plaintiff, administratrix of estate of deceased workman who
was killed while attempting to open the cabinet of a manifold
welding unit when an explosion occurred, was entitled to
instruction that there was a presumption the decedent was
exercising due care at the time of the accident, where there
was no direct evidence that deceased's action caused the ex-
plosion but the evidence was, at best, uncertainly circum-
stantial, notwithstanding there may have been eyewitnesses
to the accident.

11. SAME—INSTRUCTIONS—PRESUMPTION OF DUE CARE.

The fact that defendant now has the burden of showing con-
tributory negligence of person for whose death an action was
brought by administratrix of his estate does not eliminate
the necessity for instruction to jury that decedent was pre-
sumed to be free from contributory negligence, where evidence
as to decedent's actions immediately prior to his death was, at
best, uncertainly circumstantial (GCR 1963, 111.7).

12. NEGLIGENCE—INSTRUCTIONS.

Instructions to a jury in action based on negligence, as distin-
guished from the parties' claims, should be related to the
evidentiary facts of the case by mentioning specifically of
what the claimed negligence consisted.

13. DEATH—INSTRUCTIONS—NEGLIGENCE—MANIFOLD WELDING UNIT
—FAULTY DESIGN OF CABINET.

Instructions, given in action by administratrix of estate of de-
ceased workman who was killed as he and a fellow employee
were attempting to open the cabinet of a manifold welding
unit, technically covered plaintiff's claims that defendant man-
ufacturer of the unit was negligent in failing to provide
proper ventilation by statement of plaintiff's claim of negli-
gence in failing to warn users of the unit of the dangers
inherent in such unit, of the dangerous and explosive charac-
teristics of acetylene gas, and of the faulty design of the
unit, but better practice would be to charge specifically that
the manufacturer was under a duty to provide notice of any
dangers which the jury might find to have been inherent in
the unit or if adequate warning had been given, and, if not
given, was the failure to do so a proximate cause of decedent's
death.

14. NEGLIGENCE—DELIVERY OF DANGEROUS ARTICLES—WARNING.

One who delivers an article which he knows to be dangerous or noxious, to another person, without notice of its nature or qualities, is liable for any injury which may reasonably be contemplated as likely to result therefrom to that person, or any other who is not himself at fault.

15. SAME—VALVES FOR MANIFOLD WELDING UNIT—DESIGN OF CABINET—EVIDENCE.

Requested instruction that manufacturer of valves used in construction of manifold welding unit could be held liable for death of plaintiff's decedent because of faulty design of the cabinet housing the unit was properly refused, where there is no evidence that valve supplier was consulted in designing or knew anything about the cabinet which had not provided for ventilation.

16. NEW TRIAL — NEGLIGENCE — BREACH OF IMPLIED WARRANTY — VALVES FOR WELDING CABINET—FINDING OF JURY.

Motion for new trial as to defendant supplier of valves used in making a specially built manifold welding unit which contained oxygen and acetylene tanks was properly denied, where jury had specifically found that valves supplied were not defective and there was no other asserted act of negligence or of breach of implied warranty by such defendant.

17. NEGLIGENCE—EVIDENCE OF WORKMEN'S COMPENSATION PAYMENTS.

Evidence concerning receipt of workmen's compensation payments by an injured workman and his dependents should not be admitted in the trial of a negligence case against a third-party defendant.

18. WITNESSES—IMPEACHMENT—RECOLLECTION OF CONTRARY STATEMENT.

A witness who makes a positive statement that a certain act did not take place may be impeached with respect thereto by testimony of police officer who investigated the accident that the witness had made a contrary statement while in the hospital even though the witness denied recollection of having made such contrary statement.

19. SAME—CREDIBILITY—EVIDENCE.

The weight, if any, to be accorded the testimony of a witness is for the jury, especially where there was evidence which could' have persuaded the jury to discount or disbelieve the testimony adduced from such witness, hence, the fact that his testimony

is undisputed does not necessarily establish the fact to which he testified.

20. NEW TRIAL—BREACH OF WARRANTY—NEGLIGENCE—MANIFOLD WELDING UNIT—DESIGN—EVIDENCE.

A new trial is ordered in action for breach of warranty and for negligence by administratrix of estate of deceased employee who was killed as he and a fellow employee were attempting to open cabinet of manifold welding unit that had been specially designed and made by defendant manufacturer for use by decedent's employer, where there was evidence from which a jury could find such defendant was negligent in the design and construction of the cabinet which proximately caused the death, some instructions to which plaintiff was entitled were omitted and some of those given failed to relate sufficiently to the factual context of the case.

Appeal from Muskegon; Beers (Henry L.), J. Submitted April 7, 1964. (Calendar No. 7, Docket No. 49,936.) Decided January 4, 1965.

Case by Alice Hill, administratrix of the estate of Woodrow Hill, deceased, and Michigan Mutual Liability Company, compensation insurance carrier, against Harbor Steel & Supply Corporation, a Michigan corporation, and General Dynamics Corporation, a foreign corporation, on counts of breach of warranty and negligence in connection with explosion of welding unit. Count as to breach of warranty dismissed. Verdict and judgment for defendants on negligence count. Plaintiff appeals. Affirmed in part and reversed in part.

*Marcus, McCroskey, Finucan, Libner & Reamon* (*Thomas W. Finucan,* of counsel), for plaintiff Hill.

*Landman, Grimm, Bradbury & Laurin* (*Lou L. Landman,* of counsel), for plaintiff Michigan Mutual Liability Company.

*Mitts, Smith & Haughey* (*Sherman H. Cone,* of counsel), for defendant Harbor Steel & Supply Corporation.

*Cholette, Perkins & Buchanan* (*Edward D. Wells,* of counsel), for defendant General Dynamics Corporation.

SOURIS, J.   Woodrow Hill was employed by Fisher Steel & Supply Company as a "lead man", or working foreman, in its scrap yard. On the morning of December 24, 1958, while Hill and another Fisher Steel employee were preparing to put into operation a manifold welding unit, it exploded, killing Hill and his companion and injuring another workman.

The manifold welding unit had been designed and built for Fisher Steel by defendant Harbor Steel & Supply Corporation. The unit consisted of a steel framework which held 10 cylinders of oxygen and three cylinders of acetylene. Each cylinder was equipped with a valve which was designed, when closed, to prevent any gas from leaving the cylinders. The gases and their containers and valves were manufactured and furnished by the other defendant, General Dynamics Corporation.

All of the oxygen cylinders were individually connected to a single copper tube, and the acetylene cylinders were similarly connected to another tube. These two copper tubes then led into a metal cabinet attached to the framework supporting the cylinders. Inside the cabinet were two master valves by which the flow of gases from the tubes could be controlled.

From the master valves the oxygen and acetylene tubes ran to regulator valves, attached to each of which were two gauges. Two gauges were provided for each regulator so that the pressure of gas remaining in the cylinders as well as the gas pressure at the torch could be determined. From the regula-

tor valves the two copper tubes ran to a reel to which they were permanently attached. Flexible hoses could then be attached to the tubes, the hoses culminating in the welding torch. On the torch were three valves, one controlling oxygen, one acetylene, and one used as a "blow out" for air.

The metal cabinet served as a storage place for the welding torch and hoses when they were not in use. Although the cabinet was not air tight, it had no openings specifically designed to provide ventilation.

The welding unit was designed by defendant Harbor Steel and furnished by it to Fisher Steel because Harbor Steel wished to obtain Fisher Steel's orders for welding supplies and equipment. Harbor Steel retained ownership of the unit and made no charge for Fisher Steel's use of its equipment.

This action was brought jointly by Mrs. Hill as administratrix of her husband's estate and by Michigan Mutual Liability Company, the workmen's compensation insurer of Fisher Steel, against Harbor Steel and General Dynamics Corporation. The two-count declaration alleged that each of the defendants was liable in damages for breach of warranty of fitness for use and, in addition or alternatively, for negligence.

At the close of plaintiffs' proofs defendants moved for a directed verdict and the trial court dismissed the count for breach of warranty, but reserved its decision on the negligence count. The case was submitted to the jury on the negligence count along with a special question: "Do you find that there was a defective valve in the acetylene cylinder at the time of the explosion?" The jury answered "no" to the special question and returned a general verdict of no cause for action as to both defendants. Plaintiffs appeal from the trial court's denial of their subsequent motion for new trial.

## I.

In dismissing plaintiffs' count for breach of warranty the trial judge stated that he was doing so because there was no privity of contract between the parties and further stated that "I feel it is an out and out negligence case, I don't think that this theory of breach of warranty has anything to do with it."

There was a time, of course, when lack of privity of contract between plaintiff and defendant was a defense to a suit for breach of warranty.[1] Eventually the courts developed an exception to this harsh doctrine in the case of goods intended for human consumption. See *Hertzler* v. *Manshum*, 228 Mich 416, 421, 422. In Michigan this exception became the rule in *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich 120. In that case, tried to the court sitting without a jury, the trial court concluded (p 124) that defendant manufacturer of defective cinder blocks, which had been bought by an independent contractor and used in the construction of plaintiff's cottage, had breached an implied warranty of merchantability. Nonetheless the trial court held against plaintiff because of a lack of privity of contract between plaintiff and defendant. We reversed, holding that the trial court "should have permitted recovery either on a theory of negligence or implied warranty". 353 Mich 120, 135.

In this appeal defendant Harbor Steel argues that actions for breach of warranty and for negligence are identical—that they are but different labels for the same set of liability-predicating facts. Harbor Steel cites our earlier decisional language in *Hertzler* v. *Manshum, supra,* at 423, that the only essential

---

[1] See the discussion in *Manzoni* v. *Detroit Coca-Cola Bottling Co.*, 363 Mich 235.

difference between an action in negligence and one in warranty is. that in the latter instance privity must exist. It argues that, since we abolished the requirement of privity in the *Three Rivers Case,* there is no longer any distinction between actions for breach of implied warranty and actions for negligence.

As noted above, *Three Rivers* held that lack of privity of contract should not bar plaintiff's suit on an implied warranty. Into this straightforward ruling, the Court, unnecessarily and unfortunately in my view, injected a discussion of whether plaintiff could be allowed to recover damages on a negligence theory notwithstanding the fact that her declaration asserted only a claim for breach of implied warranty. The Court quoted the language from *Hertzler* v. *Manshum, supra,* already referred to, linking warranty and negligence, and concluded:

"But if we have thus solemnly told litigants and their counsel that suing for breach of an implied warranty is in effect tantamount to suing for negligence (one might think, for one thing, that the burden of proof might in some cases be more onerous on the plaintiff in the latter situation) we lack the heart to banish this plaintiff in this case because she trustingly took us at our word. We suggest in the future, however, that, where warranted by the circumstances, such declarations should sound explicitly in negligence as well as for claimed breach of warranty." 353 Mich 120, 131.

Thus, the Court did not, as defendant Harbor Steel contends, hold that actions for breach of implied warranty and for negligence are identical. Rather, it held that in the particular case then before it, because of the confusion created by language in previous decisions, an action for breach of implied warranty was procedurally adequate to ground a

recovery for negligence. For the future, however, plaintiffs were advised to plead both negligence and breach of implied warranty, an obvious affirmation of the Court's belief that the two are different.

In any event, *Manzoni* v. *Detroit Coca-Cola Bottling Co.*, 363 Mich 235,[2] should have made clear the fact that actions for breach of implied warranty and for negligence are different. There, plaintiffs recovered in the trial court upon an implied warranty. Defendant appealed, urging that there was no distinction between a count in implied warranty and one in tort, and that, therefore, to recover plaintiffs must establish defendant's negligence, which they allegedly did not do. Mr. Justice TALBOT SMITH commented thusly upon this argument (pp 238, 241):

"The fallacy in what is urged is the assertion that there is no distinction between counts in warranty and in tort. Their similarity in the present context lies only in the fact that each is a remedy aimed at the liability of the manufacturer and that each may be grounded upon the presence of a deleterious or harmful substance (*e.g.*, mouse, fly, snake, mold, animal or human organs, or residue) in an article intended for human consumption. At this point, however, similarities end and distinctions take over. The warranty action, of ancient lineage, did not require a showing of negligence (though a showing of negligence, of course, did not defeat it) but it did require privity of contract. The negligence action, on the other hand, did not require privity but it did require that the plaintiff show a lack of due care with respect to the particular article, *e.g.*, the bottle of Coca Cola in the present case. * * *

"We are holding that in a suit upon a warranty theory it is not necessary to show negligence, but rather breach of the implied warranty."

[2] And, as well, *Barefield* v. *LaSalle Coca-Cola Bottling Co.*, 370 Mich 1.

Thus, contrary to Harbor Steel's thesis, actions based upon breach of warranty and upon negligence are not identical, the most salient difference being also the most obvious: In an action upon a warranty, negligence need not be proved as a prerequisite to recovery.

Although the facts of *Manzoni* involved a product intended for human consumption, the Court's discussion of warranty and negligence is not confined to such products. Rather, it is general in nature,[3] the principles of the opinion having equal applicability to all product liability cases, including that now before us in this case of Hill.[4]

From the foregoing it is evident that the trial court erred in dismissing the count for breach of warranty against defendant Harbor Steel. The manifold welding unit was designed by Harbor Steel expressly for use by Fisher Steel and, necessarily, its employees, and there was evidence presented from which the jury could have found that Hill's death was proximately caused by defects inherent in the unit as it was supplied.

A somewhat different situation is presented with respect to defendant General Dynamics. As has been noted previously, the following special question

---

[3] *Cf.* this language from *Manzoni:* "The result of the operation of these [economic] forces has been a marked change in legal theory on a wide front. The food and beverage area is but a small subdivision of a field much more comprehensive, involving the whole topic of products liability. It ranges through areas both of contract and tort, from the liability of the manufacturer of a defective automobile wheel, or cinder blocks to that of the seller of an inflammable dress, or the distributor of unwholesome food or contaminated drink, or even the purveyor of a caustic perfume." 363 Mich 235, 239, 240.

[4] The generality of the discussion and its universal applicability is indicated by the concurring opinion signed by three Justices in which they attempted to restrict the scope of the Court's opinion: "We are not concerned here with the existence or nonexistence of implied warranties in cases involving the manufacture and sale of products not intended for human consumption." 363 Mich 235, 244. The fact remains that the language of the Court's opinion was not so circumscribed.

was put to the jury along with the general issue of defendants' negligence liability: "Do you find that there was a defective valve in the acetylene cylinder at the time of the explosion?" and the jury answered, "no". From the evidence produced at trial it is clear that only if the cylinder valve had been defective could there have been a causal connection between General Dynamics' products and Hill's death.[5] Such a defect would be as essential for recovery in warranty as in negligence. Since the jury found that no such defect did in fact exist, the trial court's erroneous dismissal of the warranty count against defendant General Dynamics, as well as against defendant Harbor Steel, for lack of privity, was not reversible error as it related to General Dynamics.

It need hardly be stated that if we thought that the jury had been influenced in its answer to the special question by the fact that the warranty count was not submitted to it, we would find reversible error despite the answer to the special question.[6]

[5] General Dynamics, through its Liquid Carbonic division, supplied the oxygen and acetylene cylinders used in the welding unit. General Dynamics also supplied: "The copper which went into the pigtail, that is the tubing connecting the cylinder with the twist in it to the manifold tube, that is a long one, and went to the top and along the top and went down and led to the cabinet. The copper, the connections, were bought at Liquid Carbonic. The pigtails from the acetylene cylinders to the manifold pipe were bought from Liquid Carbonic already made up. The valves in the inside of the cabinet were bought from Liquid Carbonic." Griggs, the Fisher employee who had shut down the unit the afternoon preceding the accident, testified that he closed the cylinder valves, but that he did not close the master valves on the inside of the cabinet, the regulator valves, or the gas valves on the welding torch. Thus, if Griggs were to be believed, only if the valves on the cylinders had been defective could defects in General Dynamics' products have been a proximate cause of the accident, for only in such case could acetylene have accumulated inside the cabinet as a result of fault on General Dynamics' part.

[6] See *Letts* v. *Letts*, 91 Mich 596, wherein plaintiff sought to recover upon an alleged agreement made with regard to a note. The jury found for the defendant but this Court reversed for new trial with this comment (p 599): "It is claimed that as the jury answered a special question, as to whether the alleged agreement was made, in the negative, the errors, if any, were immaterial. But we are not prepared to say that these very rulings [on admission of evidence and

However, the facts as developed at trial established beyond doubt that for an explosion to occur the acetylene valve must have been at least partially open or so defective that acetylene could leak through it. Thus the question of a defect in the valve was before the jury on the negligence count and it reached a fact decision thereon adverse to plaintiffs. We cannot conceive how that decision could have differed had there been presented to the jury plaintiffs' theory of liability based upon implied warranty.

## II.

Having thus found reversible error, ordinarily we would not consider any other of plaintiffs' claims of error. However, since this case may be retried, it is appropriate to consider other allegations of error, particularly those dealing with jury instructions.[7]

Plaintiffs asked that the trial court instruct the jury that negligence on the part of Hill's employer or of a fellow worker should not be imputed to him.[8]

---

jury instructions] may not have created a prejudice which resulted in this finding."

[7] Although plaintiffs requested that certain instructions be given, it does not appear of record that they objected to the instructions as given before the jury had retired to consider its verdict. Even at the time of this trial in April, 1962, counsel had before them the decisions in *Gilson* v. *Bronkhorst*, 353 Mich 148, and *Lober* v. *Sklar*, 357 Mich 166, both of which emphasized that the credence this Court gives to claims that instructions were reversibly erroneous depends to a considerable extent upon counsel's diligence in seeking correction of the instructions while "time yet remains to set things right in the jury room", *Gilson* at 160, note, *Lober* at 171, 172, even after the jury had retired but before announcement of its verdict. As to cases tried after January 1, 1963, GCR 1963, 516.2 controls and requires that counsel object to alleged instructional errors *before* the jury retires if he expects to rely upon such alleged errors upon appeal. See *Salvatore* v. *City of Harper Woods*, 372 Mich 14, and *Sarazin* v. *Johnson Creamery, Inc.*, 372 Mich 358. However, since in this case we are reversing on other grounds, we will consider some of the alleged instructional errors despite counsel's failure to follow the preferred, and now required, practice.

[8] Plaintiffs relied upon *Utley* v. *Taylor & Gaskin, Inc.*, 305 Mich 561, as authority for the instruction. Utley, a construction contractor,

Defendants contend that this request was sufficiently covered by the court's instruction that, in order to be excused from liability under the defense of contributory negligence, defendants must have proved that Hill himself was negligent and that his negligence was a proximate cause of his death. Technically, defendants may be correct, but in the context of this case it certainly would have been better practice for the trial court to have given the requested instruction.   During the trial defendants were sedulous in seeking to establish that but for the alleged negligence of Griggs, a Fisher Steel employee, in shutting down the welding unit the afternoon before the accident occurred, there would have been no explosion.   This is particularly significant, because Hill did not work the day before his death.

The foregoing provides an excellent illustration of the necessity for the trial bench to fashion jury instructions to meet the factual demands of the particular case in which they are given.   The abstract legal proposition that for defendants to avail themselves of the defense of contributory negligence the plaintiff must have been guilty of negligence

sued defendant for the benefit of Utley's workmen's compensation insurer for injuries received by Utley's employee allegedly as a result of defendant's negligence.   The trial court instructed that the employee's negligence was imputable to Utley, and the jury returned a verdict of no cause for action.   In reversing, this Court said (p 575): "Under such [the workmen's compensation] statute the contributory negligence of plaintiff, as employer, would not have barred his injured employee from maintaining an action directly against defendant for his injuries resulting from its negligence.   Defendant could not have pleaded the contributory negligence of [Utley], as employer, in a suit instituted against it by the injured employee.   The test of the liability of defendant to plaintiff is whether or not the employee could have held defendant liable for his injuries.   The statute, as hereinbefore stated, placed plaintiff in the shoes of his injured employee."   For a similar result reached before enactment of the workmen's compensation act, see *Philip* v. *Heraty*, 135 Mich 446, 452.   By analogy, neither may the negligence of a fellow worker be imputed to Hill.   *Cf.* this language quoted approvingly in *Hunn* v. *Michigan Central R. Co.*, 78 Mich 513, 525 (7 LRA 500): " 'Contributory negligence, to defeat a right of action, must be that of the party injured.' "

which was a proximate cause of his death may convey to an attorney all that need be said on the subject. But one of the apparent goals of jury selection is to exclude from the jury persons who have been exposed to legal training and concepts.[9] This being so, the arcane jargon of the law should not be recited *in vacuo* but, rather, the law pertinent to the case should be related in a meaningful manner to the evidentiary facts of the case.[10] For example, here the jury should have been told that for contributory negligence to bar plaintiffs' recovery, Hill's own actions must be found to have been negligent and such negligence must be found to have been a proximate cause of his own death; further, that the negligence of Hill's employer or his fellow employees would not bar plaintiffs' right to recover damages found to have been proximately caused by defendants' negligence.

Plaintiffs also contend that, inasmuch as defendants claimed that Hill was contributorily negligent, the trial court erred in refusing to instruct that in the absence of any contrary evidence there was a presumption that Hill was exercising due care at the time of the accident. Recently, we had occasion to consider such a claim in *Mack* v. *Precast Industries, Inc.*, 369 Mich 439. Mr. Justice BLACK, at p

---

[9] See the jury personal history questionnaire set forth in GCR 1963, 510.1. Prospective jurors are asked, *inter alia*, whether they have ever studied law, been a juror, or been a party to any suit.

[10] A portion of Jonathan Swift's mordant commentary upon the legal profession bears repetition here, not only for its specific pertinence relative to the use of legal cant, but also because it may help to counteract the parthenogenic euphoria of the bench and bar:

"It is likewise to be observed, that this Society [of lawyers] hath a peculiar Cant and Jargon of their own, that no other Mortal can understand, and wherein all their Laws are written, which they take special Care to multiply; whereby they have wholly confounded the very Essence of Truth and Falshood, of Right and Wrong; so that it will take Thirty Years to decide whether the Field, left me by my Ancestors for six Generations, belong to me, or to a Stranger three Hundred Miles off." Swift, Gulliver's Travels (Heritage ed), 283.

454, speaking for a majority of the participating Justices, wrote the following:

"I agree with Justice DETHMERS that no reversible error resulted from denial of plaintiff's request to charge that her decedent was presumptively free from contributory negligence. The request was not phrased in accordance with what apprehendedly is the instructionally correct rule for cases like this, set forth in durable *Gillett* v. *Michigan United Traction Co.*, 205 Mich 410, 421. Aside from that, I must register disagreement with the conclusion that former Court Rule No 23, § 3a (1945), now GCR 1963, 111.7, has eliminated need for instruction, when such instruction is otherwise appropriate, upon the subject of presumed due care. Conceivably, many cases will come to this Court where, even though the defendant now bears the burden of proving contributory negligence, the plaintiff on properly couched request in a jury case, or on judicial consideration of a nonjury case, will be entitled to aid of the presumption. Surely that will be true when, as here, the defendant's proof of such negligence presents a doubtful, or uncertainly circumstantial, question of fact for the jury, and certainly it will be true when the defendant presents no proof of contributory negligence."

The record in this case discloses that Hill and another workman were trying to open the cabinet of the welding unit when the explosion occurred. It may be that as a result of the activities of one of them the gases were ignited. There was no direct evidence that Hill's actions caused the explosion. At best, the evidence was "uncertainly circumstantial". In either event, plaintiffs were entitled to the requested instruction.

Harbor Steel argues that a presumption of due care may be injected into a case by jury instruction only when there are no eyewitnesses to the accident. In *Mack*, however, there was an eyewitness whose

testimony was favorable to plaintiff's cause, yet this Court still held that plaintiff would have been entitled to such an instruction concerning the presumption had he requested it properly.

Plaintiffs requested the court to instruct that if the jury found that "there were not proper air vents or openings in the unit to permit gases to escape", it might find that Harbor Steel was negligent in the design and construction of the unit. Technically, the trial court did cover this in its instructions:

"Now, the plaintiff contends that the defendant Harbor Steel Company was guilty of negligence in the following particulars:

"In designing, constructing and furnishing for use to Fisher Steel & Supply Company and Fisher's employees a welding unit which by reason of its design and construction was dangerous to the users thereof and to those in the vicinity of said unit. * * *

"Now, ladies and gentlemen, whether one or more of the acts of negligence charged were committed by one or both of the defendants and whether such act or acts, if committed, amount to negligence which was the proximate cause or one of the proximate causes of the death of Woodrow Hill is for you to decide after a consideration of all the facts and circumstances shown by the evidence in this case."

As previously noted, it would have been better practice to relate the court's instruction, as distinguished from the parties' claims, concretely to the evidentiary facts of the case by mentioning specifically that the claimed error in design was failure to provide proper ventilation.

Plaintiffs requested the trial court to instruct the jury that Harbor Steel had an affirmative duty to warn users of the welding unit of dangers concomitant with its use, and that, if the jury found that there was a failure to provide adequate warning, Harbor Steel might be found to be negligent.

Plaintiffs' expert witness testified that a warning legend should have been stenciled on the cabinet, which he characterized as unsafe because of its lack of ventilation, to remind users of the danger of bringing fire near it.    Arguably the request was covered by these instructions that plaintiffs *claimed* defendants were negligent:

"In failing to instruct, warn, and notify the users of said welding unit of the dangers inherent in said unit.

"In failing to instruct, warn, and notify the users of said unit of the dangerous and explosive characteristics of acetylene gas."

Somewhat later in the charge appeared the second paragraph of the instructions quoted in the preceding paragraph of this opinion.    Again, it would have been better practice had the trial court specifically charged the jury that Harbor Steel was under a duty to provide notice of any dangers which the jury might find to have been inherent in the unit.[11] Once this had been done there would, of course, remain factual questions for the jury to determine whether there were any such inherent dangers in the unit; if so, whether adequate warning thereof had been given; and, if adequate warning were not given, whether failure to give such warning was a proximate cause of Hill's death.

---

[11] In the case of *Wellington* v. *Downer Kerosene Oil Co.*, 104 Mass 64, 67, it is said:

"It is well settled that a man who delivers an article which he knows to be dangerous or noxious, to another person, without notice of its nature and qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other, who is not himself in fault."

This Court quoted the foregoing language with approval in *McLawson* v. *Paragon Refining Co.*, 198 Mich 222, 232, and reiterated its adoption thereof in *Grinnell* v. *Carbide & Carbon Chemicals Corp.*, 282 Mich 509, 529, 530.

Plaintiffs argue that the trial court erred in two respects in its instructions regarding the negligence liability of General Dynamics.

(1) The trial court did not give plaintiffs' requested instruction that if the jury found that General Dynamics "was consulted about the design and construction of the welding unit" and also found that the unit was improperly constructed, then General Dynamics might be found negligent. Such an instruction would have been improper because there is no evidence in the record to support a finding that General Dynamics was so consulted. In support of their claim, plaintiffs cite testimony by Ernest Brown, a Harbor Steel employee who helped design the welding unit. While Mr. Brown testified that he consulted an employee of General Dynamics about "leads from the acetylene cylinder to the main manifold pipe going to the cabinet", there was no evidence that he consulted any employee of General Dynamics about the cabinet's construction. Indeed, Mr. Brown specifically denied that he had consulted General Dynamics concerning the cabinet. Since the cabinet was the element of the unit allegedly defectively designed, because it was not vented, and since there was no evidence that General Dynamics had been consulted thereon, the requested instruction was refused properly.

(2) Plaintiffs also requested an instruction that General Dynamics could be found negligent if it "should have known, or knew, of an imminently dangerous condition in the welding unit". As was said above, there is no evidence to support a finding that General Dynamics was given any information concerning the cabinet of the welding unit.[12] Refusal

---

[12] On examination by Mrs. Hill's attorney, Harold Crawford, vice-president of Harbor Steel and one of those who designed the welding unit, testified:

to give this requested instruction likewise was proper.

Since the jury found, in its answer to the special question, that the acetylene valve was not defective and since no other asserted act of negligence or of breach of implied warranty by defendant General Dynamics has any evidentiary support, the trial court's denial of plaintiffs' motion for new trial against General Dynamics is affirmed.

## III.

Mrs. Hill and Michigan Mutual Liability Company, Fisher Steel's workmen's compensation insurer, filed a joint declaration against defendants. At trial plaintiffs' witness Lang was permitted to

"*Q*. Did you consult the General Dynamics Corporation or the Liquid Carbonic Division of General Dynamics Corporation in making this unit or in designing it?

"*A*. I never did, no."

During the examination by Mrs. Hill's attorney of Ernest Brown the following colloquy ensued:

"*Q*. As I understand it, when you, at the outset began to build this particular unit, Mr. Brown, you consulted Mr. Marry at Liquid Carbonic, it that correct?

"*A*. That's right. * * *

"*Q*. What did you tell Mr. Marry?

"*A*. I told Mr. Marry we needed fittings to hook up cylinders in a manifold, such as tubing.

"*Q*. Did you tell him how many cylinders?

"*A*. Yes.

"*Q*. Did you tell him how these were going to be joined together and how you wanted them?

"*A*. No. * * *

"*Q*. All right. Did you ever submit to Mr. Marry a plan of this thing?

"*A*. No.

"*Q*. Did you tell him about the cabinet that you made for the master valves? * * *

"*A*. I don't believe I did. I believe I just said—I don't believe I did. I asked him is, to purchase an oxygen valve and an acetylene valve.

"*Q*. Is this the kind that goes in a cylinder?

"*A*. It is.

"*Q*. Any other kind of valves you asked him for?

"*A*. No."

testify over defendants' objections to the amount which had been paid to Mrs. Hill for funeral expenses and for weekly compensation under the workmen's compensation act.  Plaintiffs asked that an instruction be given to the jury reiterating the precise amount already received by Mrs. Hill as workmen's compensation, and noting that future payments were yet to be made and that Michigan Mutual would be reimbursed from any recovery granted Mrs. Hill for such payments made or yet to be made.  The trial court instructed the jury that Michigan Mutual had already made payments to Mrs. Hill and would be required to make payments in the future, and that in the event a judgment was given for plaintiffs, Michigan Mutual would be "reimbursed from such money judgment for any amount it is required to pay under such law."

Decisions made in this Court subsequent to the trial below control our ruling on this point.  The case was tried in April, 1962, before our decisions in *McCullough* v. *Ward Trucking Co.*, 368 Mich 108, and *Leitelt Iron Works* v. *DeVries,* 369 Mich 47. In the course of those two decisions, a majority of the Court as presently constituted ultimately held that evidence concerning receipt of workmen's compensation payments by an injured workman and his dependents should not be admitted in the trial of a negligence case against a third-party defendant.

While remaining convinced of the soundness of my opinions in *McCullough* and *Leitelt*,[13] and hopeful that this Court someday will agree therewith, I bow for the present to the Court's last expression of its majority's apparent will.  The evidence upon which plaintiffs relied as a foundation for their requested instruction should not have been admitted.

---

[13] As, apparently, were some members of the bar, including both Mrs. Hill's and Michigan Mutual's "veteran and experienced trial counsel", *McCullough, supra,* 118.

Plaintiffs' final contention is that the trial court erred by admitting into evidence testimony of an investigating police officer regarding statements made to him after the accident by plaintiffs' witness Griggs. Griggs was in the hospital at the time of the interview and testified that he did not remember the interview. Citing *People* v. *Durkee,* 369 Mich 618, plaintiffs argue that Griggs could not be impeached by the police officer's testimony about such former statements.

In *Durkee,* witness Kaufman testified that she neither remembered the accident nor her questioning by a police officer concerning it. We held that in such circumstances it was error to read into the record transcribed questions asked and answers given at the interview. Here, however, Griggs was asked at trial if he had seen Hill produce a book of matches or had seen anyone "strike a light" and he answered, "no". He was then asked if he recalled having made a statement to a police officer that Hill had struck a match to thaw out the lock on the cabinet. Notwithstanding his denial of recollection of the statement made to the police officer, in the light of his prior testimony relating to events immediately preceding the explosion, it was proper to permit the officer to testify regarding his conversation with Griggs, since it served to impeach Griggs' testimony that he had not seen Hill light a match. In *Durkee, supra,* the witness had testified she did not remember any of the events preceding the accident, and this Court's disapproval of the use of her subsequent statement to a police officer regarding such events was based upon the principle that where a witness testifies he does not remember certain events he cannot be impeached by introduction of subsequent statements regarding the events he claims not to remember.

## IV.

Harbor Steel argues with considerable force that there was no evidence produced at trial which would sustain a verdict for plaintiffs and that, therefore, the jury's verdict of no cause for action should be sustained. We shall not repeat defendant's elaborate argument, but we do note that its compelling force depends, *inter alia,* upon the jury's finding that the valve on the acetylene cylinder was completely shut off the afternoon preceding the accident. Defendant argues that this is an undisputed fact because Griggs testified that he did so shut off the valve.

It must be remembered, however, that it is the jury which weighs a witness' testimony, and it could have disbelieved Griggs. After all, the jury knew that Griggs was also prosecuting a suit against the defendants, that he claimed he could not remember an interview with a police officer shortly after the accident, and that he was confessedly habitually negligent in shutting down the welding unit, in that he usually left open the master, regulator, and torch valves while shutting only the cylinder valves. These facts alone could have persuaded the jury to discount Griggs' testimony and to conclude that he had not shut off the acetylene cylinder valve completely.[14]

Under the facts of this case the jury could have found that Harbor Steel was negligent in the design and construction of the welding unit's cabinet, and that this negligence was a proximate cause of Hill's death. This being so, the fact that some instructions to which plaintiffs were entitled were omitted,

---

[14] Had he not shut off the valve completely, acetylene could have been leaking into the cabinet for over 15 hours prior to the accident. Expert testimony indicated that the explosion could have occurred had the cabinet contained as little as 2–1/2% by volume of acetylene.

while others were given but were not sufficiently related to the factual context of the case, requires that we reverse for new trial on the negligence claim as well as on the warranty claim. To do otherwise would put this Court in the position of deciding what the jury might have done had the case been presented to it properly. This we decline to do.

Affirmed in part and reversed in part. Costs to plaintiffs and General Dynamics.

KAVANAGH, C. J., and SMITH and ADAMS JJ., concurred with SOURIS, J.

BLACK, J., concurred in result.

DETHMERS, J. (*dissenting in part*). I do not agree with Mr. Justice SOURIS that this case should be reversed as to defendant Harbor Steel & Supply Corporation on his asserted ground that the trial court erred in dismissing the count for breach of warranty against that defendant. I do agree with his affirmance as to the other defendant.

I am in full accord with Justice SOURIS' observation that the majority opinion in *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich 120, "unnecessarily and unfortunately * * * injected a discussion of whether plaintiff could be allowed to recover damages on a negligence theory notwithstanding the fact that her declaration asserted only a claim for breach of implied warranty." Indeed, that is only part of what seems to me to be unfortunate about that opinion. It professed to bring clarity to what it termed a state of "legal confusion". If such existed before, it seems only to have been confounded by that *Spence* opinion. Hence, Justice SOURIS' pained efforts at clarification. For the reasons stated in Mr. Justice KELLY's opinion in that case and the many cases therein

cited, I would affirm, in the instant case, the trial court's dismissal of the count sounding in breach of warranty for lack of privity between the parties. See, also, Mr. Justice CARR's opinion in *Manzoni v. Detroit Coca-Cola Bottling Company,* 363 Mich 235, 243, limiting application of the decision to cases of products, as there involved, manufactured and sold for human consumption.

With respect to the question of instructions discussed in Justice SOURIS' opinion, I do not find them so deficient or erroneous as to warrant reversal and grant of new trial on the negligence theory. The requests of plaintiffs which Justice SOURIS considers appropriate were, with one exception, adequately covered by instructions actually given. The exception consists of the requested instruction that there was a presumption that Hill was exercising due care. I am still of the view, expressed in my opinion in *Mack v. Precast Industries, Inc.,* 369 Mich 439, that with the burden resting on defendant, under the recent rule, to prove contributory negligence on plaintiff's part, there is no necessity for an instruction of presumption of plaintiff's freedom therefrom.

The judgment should be affirmed. Costs to defendants.

KELLY, J., concurred with DETHMERS, J.

O'HARA, J. (*concurring in result*). In my view, we ought to face up to the fact that *Spence v. Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich 120, contained language that was not only unnecessary and unfortunate as found by Mr. Justice SOURIS, and that the case compounded any legal confusion that may have existed before it, as found by Mr. Justice DETHMERS, but that some of its language is simply bad law and ought to be expressly overruled. It is little wonder that our trial bench dismisses and

refuses to dismiss warranty counts in products liability cases without apparent standard when we permit the following language to stand as precedent:

"But if we have thus solemnly told litigants and their counsel that suing for breach of an implied warranty is in effect tantamount to suing for negligence * * * we lack the heart to banish this plaintiff in this case because she trustingly took us at our word." *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich 120, at 131.

Mayhaps *Spence* attained a just result but its quoted language is cool comfort to other plaintiffs or defendants similarly situated, or to trial judges— who knows what "heart" this Court will have or lack another day. Law—like ambition—"should be made of sterner stuff." I would reaffirm here what *Spence* really decided: lack of privity of contract is not a defense to an action by a purchaser for breach of an implied warranty of fitness for the purpose for which a product is manufactured and sold. Other than that, the case has no precedential force.

I agree with Justice SOURIS that *Manzoni* v. *Detroit Coca-Cola Bottling Co.*, 363 Mich 235, has equal applicability to all product liability cases. Therefore it is the law of this State that the class of persons who may maintain actions for breach of an implied warranty of fitness includes consumers and users as well as purchasers, however remote.

For the foregoing reasons, I agree with Justice SOURIS that the case at bar must be reversed because the trial court dismissed the warranty count for lack of privity of contract as to defendant Harbor Steel. I agree also that dismissal as to defendant General Dynamics was not *reversible* error for the reasons he sets out.

I agree with Justice DETHMERS that the instructions were not reversibly erroneous except as to the requested instruction concerning the presumption that plaintiff was in the exercise of due care. To this instruction, plaintiff was entitled under the majority opinion in *Mack* v. *Precast Industries, Inc.,* 369 Mich 439, irrespective of my view of the question.

I turn now to the question of the admissibility of evidence concerning the receipt of and the amount of workmen's compensation payments in cases where the compensation insurer is a party plaintiff (and in my view he can't be kept "out" if he wants "in" despite our equivocal writings on the point). Since I did not participate in *McCullough* v. *Ward Trucking Co.,* 368 Mich 108; nor *Leitelt Iron Works, for use and benefit of Michigan Mutual Liability Company,* v. *DeVries,* 369 Mich 47, I welcome this opportunity to express myself.

There is no adequate answer from the standpoint of an injured plaintiff. He is damned if the jury gets the information and damned if it doesn't. If the information is withheld, the jury is left to speculate blindly on what actual pecuniary interest the compensation insurer has in the case. Surely, this for a plaintiff's counsel, is buying a pig in a poke. The jury may add or it may subtract in consequence. If the information is given to the jury, as Justice BLACK noted in *Leitelt, supra,* at p 58, it beclouds the real basis for the determination of the amount of damages, and because under our statute[1] the actual amount of an insurer's interest cannot be determined. Really the problem is legislative. So long as we must continue to try this type of case under the monstrosity that is supposed to give an injured workman *an additional cause of action for damages not included under the workmen's*

---

[1] CLS 1961, § 413.15 (Stat Ann 1960 Rev § 17.189).

*compensation act,* but by its terms *actually constitutes the injured workman a collection agent for the insurer, this Court cannot formulate any fair rule.* Despite Justice BLACK's postulate that the information is a "pot of irrelevance" (*Leitelt, supra,* p 58) with Justice SOURIS "I remain troubled by the possible consequences of nondisclosure" (*McCullough, supra,* p 119). I agree with him in his *McCullough* dissent, that full disclosure is at least the lesser of the two evils.

I sincerely hope that the legislature will address itself in the coming session to the problem posed by the wording of the third-party liability section of our act, as it relates to distribution of compensation benefits between injured worker and insurer, in view of the practical impossibility of determining under the insurer's liability section of the act exactly what its total financial involvement is at the time of trial in the event of a judgment for damages.

I vote to affirm in the dismissal as to defendant General Dynamics and to reverse and remand with a new trial as to defendant Harbor Steel.